Glenn Katon SBN 281841
KATON.LAW
385 Grand Avenue, Suite 200
Oakland, CA 94610
gkaton@katon.law
(510) 463-3350
(510) 463-3349 (fax)

ATTORNEY FOR PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HOFER and JONATHAN HOFER,<br><br>   Plaintiffs,<br><br>v.<br><br>KYLE EMLEY, a Contra Costa County Deputy Sheriff, in his individual capacity, WILLIAM ODOM, a Contra Costa County Deputy Sheriff, in his individual capacity, BRANDON GANT, a Contra Costa County Deputy Sheriff, in his individual capacity, Defendant DOE 1, a Contra County Deputy Sheriff, in his individual capacity, COUNTY OF CONTRA COSTA, a municipal corporation, CITY OF SAN JOSE, a municipal corporation, VIGILANT SOLUTIONS, INC., GETAROUND, INC., and Does 1 to 50,<br><br>   Defendants. | Case No.<br><br>**COMPLAINT AND JURY DEMAND** |

  Plaintiffs Brian Hofer and Jonathan Hofer bring this Complaint against Defendants based upon the following:

  1. This is a civil rights case based upon Defendants' violation of the Fourth Amendment's prohibition against unreasonable searches and seizures, and several state torts. Contra Costa County Sheriff's Deputies stopped, searched, detained, and arrested Plaintiffs without probable cause to

believe they committed a crime, and searched their vehicle without probable cause or a warrant. Other Defendants transmitted inaccurate information and/or failed to update that information, endangering Plaintiffs' lives, violating their civil rights, and causing them injuries.

## PARTIES

2. Plaintiff BRIAN HOFER ("BRIAN") is and was an individual residing in Oakland, California at all times relevant to this action.

3. Plaintiff JONATHAN HOFER ("JONATHAN") is and was an individual residing in Oakland, California at all times relevant to this action.

4. Defendant KYLE EMLEY ("EMLEY") was at all times relevant to this action a Deputy Sheriff for Contra Costa County acting within the course and scope of his employment and under color of state law.

5. Defendant BRANDON GANT ("GANT") was at all times relevant to this action a Deputy Sheriff for Contra Costa County acting within the course and scope of his employment and under color of state law.

6. Defendant WILLIAM ODOM ("ODOM") was at all times relevant to this action a Deputy Sheriff for Contra Costa County acting within the course and scope of his employment and under color of state law.

7. Defendant DOE 1 is sued herein under a fictitious name. His true name is unknown to Plaintiffs. When his true name is ascertained, Plaintiffs will seek leave of Court to amend this Complaint by adding Doe's real name. DOE 1 was at all times relevant to this action a Deputy Sheriff for Contra Costa County acting within the course and scope of his employment and under color of state law.

8. Defendant COUNTY OF CONTRA COSTA ("CONTRA COSTA"), California, is and was a municipal corporation at all times relevant to this action. CONTRA COSTA owns, operates, manages, directs, and controls the Contra Costa County Sheriff's Office, and employs EMLEY, GANT, ODOM, and DOE 1. Throughout the incident that is the subject of this Complaint, EMLEY, GANT, ODOM, and DOE 1 followed CONTRA COSTA's policies and practices.

9. Defendant CITY OF SAN JOSE ("SAN JOSE"), California is and was a municipal corporation at all times relevant to this action. SAN JOSE established its police department through § 807 of the City Charter and has delegated police powers to the chief of police, who is responsible for administering the operation of the police department, through its Municipal Code § 2.04.4020.

10. Defendant VIGILANT SOLUTIONS, INC. ("VIGILANT") is a maker of automated license plate readers ("ALPR"). The CONTRA COSTA Sheriff's department used VIGILANT's ALPR at all times relevant to this action.

11. Defendant GETAROUND, INC. ("GETAROUND") is a car sharing platform, whereby private vehicle owners rent their vehicles to other private parties. GETAROUND also provides its own vehicles to the platform for rental by private parties. The car BRIAN rented at the time of the events in this Complaint was owned by GETAROUND.

12. Defendant DOES 2-50 are actors who participated in the constitutional violations and/or torts alleged in this Complaint. When their true names are ascertained, Plaintiffs will seek leave of Court to add those DOES to the Complaint by their real names.

## JURISDICTION AND VENUE

13. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because it is brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiffs bring this action pursuant to the Fourth Amendment to the United States Constitution. The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law.

14. **Intradistrict Assignment**: A substantial part of the acts and/or omissions in this Complaint occurred in the County of Contra Costa, California. Pursuant to Civil L.R. 3-2(c) this case is properly assigned to the Oakland or San Francisco Division of the Court.

## FACTS

15. On November 21, 2018, BRIAN rented a car from GETAROUND so that he and his brother JONATHAN could travel north to visit family for the Thanksgiving holiday. They rented the car without incident.

16. On November 25, 2018, BRIAN and JONATHAN were returning to Oakland from the holiday, driving west on I-80 near San Pablo, California. At approximately 6:50 p.m., they were stopped by a Contra Costa Sheriff's deputy, later identified as GANT. After tailing them for a period of time, GANT turned on his overhead lights and directed BRIAN over the loudspeaker to exit the freeway. BRIAN was neither exceeding the speed limit nor violating any other laws.

17. BRIAN complied and exited I-80 by taking the San Pablo Dam Road off-ramp, and he pulled into a well-lit shopping center parking lot near Ross Dress for Less and Jack in the Box. BRIAN put the car into park, turned off the engine, and turned on the inside dome light so that the officer could easily see inside the car.

18. At this time, two additional Sheriff vehicles surrounded BRIAN and JONATHAN's vehicle. The drivers of the other two police vehicles were later identified as EMLEY and ODOM.

19. Next, GANT told BRIAN that "you probably have some idea what is going on," but made no attempt to explain why he pulled them over. BRIAN stated to GANT that he did not have any idea what was going on, and BRIAN requested that GANT check their identification and discuss the matter with them. GANT did not do so.

20. GANT next directed BRIAN to remove the car key from the ignition and place it on the roof of the vehicle, which BRIAN did.

21. GANT next directed BRIAN to place both hands outside the driver's window, which BRIAN did.

22. GANT next directed JONATHAN to place both hands outside the passenger window. BRIAN informed GANT that this was impossible, as the power window was rolled up, and without the key to turn on the engine, the window could not be opened. GANT acknowledged this.

23. GANT next directed BRIAN to open his driver side door, place his hands behind his head, and walk backwards towards the sound of GANT's voice. This was when BRIAN noticed GANT was pointing his gun at him, as was EMLEY.

24. BRIAN complied with GANT's directions. As BRIAN reached GANT, GANT grabbed BRIAN's hands and handcuffed them behind his back. GANT made no attempt to check BRIAN's identification, or ask any questions about the car, BRIAN or JONATHAN.

25. GANT placed BRIAN in the back of GANT's vehicle.

26. EMLEY and GANT next directed JONATHAN to exit the passenger side door in a similar manner as BRIAN. From the back of GANT's vehicle, BRIAN saw that deputies GANT, EMLEY, and ODOM all had their guns drawn and pointed at JONATHAN.

27. JONATHAN complied with the officers' directions, walking backwards slowly and non-threateningly towards EMLEY.

28. For no apparent reason, EMLEY started screaming at JONATHAN and pushed JONATHAN to his knees, facing away from EMLEY. In full view of BRIAN, EMLEY pointed his gun to the back of JONATHAN's head, execution-style. BRIAN was terrified that if he yelled, EMLEY would shoot JONATHAN in the head, so he stayed quiet and still in GANT's car. EMLEY next slammed JONATHAN forward to the ground, injuring JONATHAN.

29. EMLEY then handcuffed JONATHAN behind his back, and placed JONATHAN in the back of EMLEY's vehicle.

30. GANT, ODOM, and EMLEY made no attempt to identify BRIAN or JONATHAN, or to communicate any information about why they were brutally apprehending BRIAN and JONATHAN.

31. As BRIAN sat in the back of GANT's vehicle, he noticed a VIGILANT screen on GANT's police computer. A surveillance reform activist, and Chair of the City of Oakland's Privacy Commission, BRIAN is familiar with VIGILANT and its ALPR systems.

32. The three officers next searched BRIAN's rental vehicle, opening all doors and the closed trunk. GANT unzipped the suitcases in the trunk and examined the contents of the luggage, which contained clothing.

33. The officers did not have a warrant to search the vehicle and its contents and at no time did BRIAN or JONATHAN consent to those searches. The officers also did not have a warrant to search or arrest BRIAN or JONATHAN.

34. GANT finally asked BRIAN for his identification. Still handcuffed, BRIAN directed GANT to his front pocket and GANT removed BRIAN's wallet containing his driver's license. GANT presumably called dispatch using his radio to check BRIAN's identification.

35. EMLEY did the same to JONATHAN, also still handcuffed, removing JONATHAN'S identification and using his radio to inquire.

36. GANT next walked over to BRIAN and finally stated that the ALPR registered the car's license plate as a "hit" against a stolen vehicle "hot list."

37. BRIAN explained that he had rented the car from GETAROUND, which presumably would not have rented him a stolen vehicle. GANT asked BRIAN for the rental paperwork, and BRIAN told GANT that he booked the rental through an application on his smartphone, which was still in the vehicle.

38. GANT fetched the phone and walked over to BRIAN, demanding the passcode. BRIAN refused to provide GANT the code and asked to enter it himself. GANT denied this request and said BRIAN had "no choice" but to provide him the passcode. BRIAN did not know if this meant GANT would shoot him if he refused, beat him, take him to the police station, or take some other unlawful action in addition to demanding the passcode to his phone, which had stored on it a digital record of nearly every aspect of BRIAN's life. BRIAN reluctantly gave GANT the code.

39. Neither GANT nor the other officers on the scene had a warrant to search BRIAN's phone.

40. GANT opened the phone's screen, and BRIAN directed him to the GETAROUND application. Upon opening, the application showed an active car rental. GANT walked away with BRIAN's unlocked phone to talk to the other officers.

41. GANT then called GETAROUND. GETAROUND confirmed to GANT that BRIAN had rented the car as he claimed.

42. GANT next removed BRIAN from the vehicle and took off the handcuffs. EMLEY did the same for JONATHAN. By this time, BRIAN and JONATHAN had been in police custody for approximately forty minutes.

43. ODOM told BRIAN that he "told the others the "hit" made no sense."

44. GANT informed BRIAN that they could not yet leave, as he was waiting on his supervisor, DOE 1, to bring some paperwork. DOE 1 arrived but did not speak to BRIAN or JONATHAN.

45. DOE 1 handed GANT a single sheet of mostly blank paper, and GANT asked BRIAN to sign it, stating that by signing it, BRIAN was acknowledging that he had been detained for longer than 15 minutes. BRIAN signed it. No such paperwork was presented to JONATHAN.

46. GANT, ODOM, EMLEY, and DOE 1 each either used forced against BRIAN and JONATHAN and/or, as armed back up, were integral participants in the use of force.

47. At no time did GANT, ODOM, EMLEY, or DOE 1 intervene or attempt to intervene to stop the other officers' excessive use of force.

48. BRIAN and JONATHAN left the scene, and returned the vehicle to the GETAROUND lot in Oakland, near where they lived.

49. BRIAN and JONATHAN timely and properly filed government code claims against CONTRA COSTA and SAN JOSE pursuant to California Government Code § 910 *et seq*, and this action is timely filed within all applicable statutes of limitation.

### San Jose

50. The SAN JOSE Police report relating to the vehicle BRIAN was driving on November 25, 2018 indicates that on October 20, 2018, an unnamed driver had temporarily stepped away from the vehicle while it was running, and when they returned, it had been stolen. The driver contacted the SAN JOSE police department to report the theft. The SAN JOSE police department placed the vehicle on the "hot list" of stolen vehicles, such that an alert was apparently send to police agencies and ALPR vendors like VIGILANT. Nothing in the report suggested that a carjacking or act of violence had occurred.

51. After the vehicle was recovered, the SAN JOSE police department failed to remove the vehicle from the list of stolen vehicles, such that it remained on the "hot list" and in VIGILANT's database until at least November 25, when BRIAN and JONATHAN were pulled over.

### Vigilant

52. VIGILANT provides ALPR services to both private customers and public agencies. As manufacturer of the equipment and host of the data, VIGILANT has a duty to ensure the accuracy of the information within its ALPR system, especially when used by police interacting with members of the public.

53. After the vehicle was recovered, VIGILANT failed to update the "hot list" of stolen vehicles, such that the vehicle remained in the ALPR system until at least November 25, when BRIAN and JONATHAN were pulled over.

*GetAround*

54. After the vehicle was recovered in San Jose by the unnamed driver and placed back into their platform to be rented again, GETAROUND failed to notify SAN JOSE's police department of the recovery. This resulted in the vehicle remaining on the "hot list" of stolen vehicles and in VIGILANT's ALPR system until at least November 25, when BRIAN and JONATHAN were pulled over.

55. GETAROUND breached its contract with BRIAN and harmed BRIAN and JONATHAN by renting BRIAN a reportedly stolen vehicle. GETAROUND also breached its duty to renters of its vehicles to update information it provides to police agencies regarding the status of its vehicles that were reported stolen.

*Damages*

56. BRIAN and JONATHAN suffered a deprivation of their liberty as a result of their arrest by Contra Costa deputies.

57. BRIAN and JONATHAN also suffered severe emotional distress from having guns pointed at them, being handcuffed and detained, and otherwise being subjected to excessive force and treated like violent criminals.

58. JONATHAN suffered bruises from being thrown to the ground and an injury to his hand that may require surgery.

59. BRIAN suffered acute emotional trauma from witnessing EMLEY pointing his gun at the back of JONATHAN's head while he was on his knees and posed absolutely no threat to EMLEY.

**COUNT ONE: 42 U.S.C. § 1983 (FOURTH AMENDMENT)**
**AGAINST GANT, ODOM, EMLEY, and DOE 1**

60. Pursuant to the foregoing, Defendants violated Plaintiff's rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

61. Defendants stopped, detained, and arrested BRIAN and JONATHAN without a warrant and without probable cause.

62. Defendants further conducted a warrantless search of BRIAN and JONATHAN's trunk and suitcases and coerced BRIAN to provide the password to his phone.

63. Throughout the ordeal, Defendants' used excessive force against BRIAN and JONATHAN.

64. Defendants' Fourth Amendment violations caused BRIAN and JONATHAN damages for which they are entitled to recovery.

**COUNT TWO: BANE ACT**
**AGAINST CONTRA COSTA, GANT, ODOM, EMLEY, and DOE 1**

65. As set forth above, Defendants, acting alone or in concert, intentionally interfered with, or attempted to interfere with, BRIAN and JONATHAN's civil rights by threats, intimidation, or coercion.

66. Defendants made threats of violence and committed acts of violence against BRIAN and JONATHAN, causing them physical and emotional injuries.

67. Defendants also interfered with, attempted to interfere with, and violated BRIAN and JONATHAN's rights as follows:

   a. The Fourth Amendment right to protection from the use of excessive force and unreasonable searches at the hands of police officers;

   b. The right to be free from the use of excessive force and unreasonable searches as secured by the California Constitution, Article 1, Section 13;

   c. The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

68. The threats, intimidation, and coercion described in this Complaint were not necessary or inherent to Defendants' violation of BRIAN and JONATHAN's rights, or to any legitimate police activity.

69. Further, in the alternative or concurrently, Defendants' violations of duties and rights and coercive conduct were volitional acts; not accidental or merely negligent.

70. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of BRIAN and JONATHAN's rights under the United States and California's Constitution and law, they sustained injuries and damages for which they are entitled to compensation.

**COUNT THREE: ASSAULT & BATTERY**
**AGAINST CONTRA COSTA, GANT, ODOM, EMLEY**

71. As set forth above, Defendants committed Assault and Battery against BRIAN and JONATHAN.

72. Defendants wrongful acts were a direct and proximate cause of BRIAN and JONATHAN's injuries and damages, for which they are entitled to compensation.

**COUNT FOUR: FALSE IMPRISONMENT**
**AGAINST CONTRA COSTA, GANT, ODOM, EMLEY**

73. As set forth above, Defendants committed False Imprisonment against BRIAN and JONATHAN.

74. Defendants wrongful acts were a direct and proximate cause of BRIAN and JONATHAN's injuries and damages, for which they are entitled to compensation.

**COUNT FIVE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST CONTRA COSTA, GANT, ODOM, EMLEY**

75. As set forth above, Defendants committed Intentional Infliction of Emotional Distress against BRIAN and JONATHAN.

76. Defendants wrongful acts were a direct and proximate cause of BRIAN and JONATHAN's injuries and damages, for which they are entitled to compensation.

**COUNT SIX: NEGLIGENCE**
**AGAINST CONTRA COSTA, GANT, ODOM, EMLEY, DOE 1, SAN JOSE, VIGILANT, GETAROUND, and DOES 2-50**

77. In the alternative to the intentional conduct alleged above against CONTRA COSTA, GANT, ODOM, EMLEY, DOE 1, those Defendants negligently breached their duty of care when conducting the traffic stop of BRIAN and JONATHAN.

78. Pursuant to the foregoing, SAN JOSE negligently breached its duty to maintain accurate records of stolen vehicles, which records are transmitted to police agencies throughout California and the rest of the United States.

79. Pursuant to the foregoing, VIGILANT breached its duty to maintain accurate records of stolen vehicles, which records are transmitted to police agencies throughout California and the rest of the United States through its ALPR system.

80. In the alternative to ¶ 51, above, GETAROUND breached its duty to update SAN JOSE and/or other police agencies that the car it rented to BRIAN and JONATHAN was not stolen or had been returned.

81. Defendants' negligent acts were a direct and proximate cause of BRIAN and JONATHAN's injuries and damages, for which they are entitled to compensation.

WHEREFORE, Plaintiffs demand judgment in their favor as follows:

a. Compensatory damages in an amount to be proven at trial;
b. Punitive damages;
c. Costs of suit;
d. Attorney's fees as provided by law; and
e. Such other and further relief in favor of Plaintiffs as is just and proper.

Respectfully submitted,

/s/ Glenn Katon
Glenn Katon

ATTORNEY FOR PLAINTIFFS