SHARON L. ANDERSON (SBN 94814)
County Counsel
DYLAN RADKE (SBN 207757)
Deputy County Counsel
COUNTY OF CONTRA COSTA
651 Pine Street, Ninth Floor
Martinez, California 94553
Telephone:   (925) 335-1800
Facsimile:    (925) 335-1866
Electronic Mail: dylan.radke@cc.cccounty.us

Attorneys for Defendants
COUNTY OF CONTRA COSTA,
KYLE EMLEY and BRANDON GANT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HOFER and JONATHAN HOFER,<br><br>            Plaintiffs,<br><br>v.<br><br>KYLE EMLEY, a Contra Costa County Deputy Sheriff, in his individual capacity, WILLIAM ODOM, a Contra Costa County Deputy Sheriff, in his individual capacity, BRANDON GANT, a Contra Costa County Deputy Sheriff, in his individual capacity, Defendant DOE 1, a Contra County Deputy Sheriff, in his individual capacity, COUNTY OF CONTRA COSTA, a municipal corporation, CITY OF SAN JOSE, a municipal corporation, VIGILANT SOLUTIONS, INC., GETAROUND, INC. and DOES 1 to 50,<br><br>            Defendants. | No. C19-02205 JSC<br><br>DEFENDANTS COUNTY OF CONTRA COSTA, KYLE EMLEY AND BRANDON GANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date:    August 22, 2019<br>Time:    9:00 a.m.<br>Crtrm:   F, 15th Floor<br>Judge:   Hon. Jacqueline Scott Corley, Presiding<br>Date Action Filed:  April 24, 2019<br>Trial Date:  None Assigned |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION............................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES.............................. 1

I.    INTRODUCTION........................................................ 1

II.   ISSUES TO BE DECIDED............................................... 2

III.  SUMMARY OF RELEVANT FACTS....................................... 2

IV.   LEGAL ARGUMENT.................................................... 3

    A.    Legal Standard................................................ 3

    B.    There is No Fourth Amendment Violation for Detaining Plaintiffs Because License Plate From a Stolen Car Provides Reasonable Suspicion for a Traffic Stop to Investigate a Felony........................................ 4

        1.    A Report of a Stolen Car Creates Reasonable Suspicion of Criminal Activity Warranting Further Investigation................ 4

        2.    A Mistake of Fact That the Car was not Stolen Does Not Undermine Reasonable Suspicion For An Investigatory Traffic Stop............ 5

        3.    A High-Risk Felony Traffic Stop Involving the Pointing of Guns and Handcuffing Suspects Based on a Reasonable Suspicion that a Suspect is Driving a Stolen Car does not Convert the Investigatory Detention into an Arrest Requiring Probable Cause................. 6

    C.    There was no Excessive Force Because a High-Risk Traffic Stop Involving the Pointing of Guns and Handcuffing a Suspect is a Reasonable Use of Force Where There is Reasonable Suspicion that a Suspect is Driving a Stolen Car.................................................... 8

    D.    Deputy Gant and Deputy Emley are Entitled to Qualified Immunity......... 9

        1.    It Was Unclear to a Reasonable Officer that it was Unlawful to Rely on an Accurate ALPR Alert as the Basis for Reasonable Suspicion to Detain Plaintiffs and Therefore Deputy Gant and Deputy Emley are Entitled to Qualified Immunity.................................. 11

        2.    It was Unclear to a Reasonable Officer that it was Unlawful to Perform A High-Risk Stop of a Car that the Officer had a Reasonable Suspicion to Believe was Stolen...................... 11

    E.    Plaintiffs' Civil Code Section 52.1 Claim Fails, as there was No Constitutional Violation.......................................... 12

    F.    Plaintiffs' State Law Tort Claims for Assault and Battery, False Imprisonment, Intentional Infliction of Emotional Distress and Negligence Should be Dismissed............................................ 13

1     1.  These Allegations are Superfluous and Confusing Because the Sole
        Applicable Determination is Whether The Officers' Actions Were

2        Privileged. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

3     2.  Plaintiffs' Negligence Theory Against Defendants Fails Because
        there is No Duty to Engage Particular Tactics Investigating a Stolen

4        Car or Making a High-Risk Stop. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

5 V.   CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

<u>Cases</u>

3

*Adams v. Williams,* 407 U.S. 143 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4

*Alexander v. County of Los Angeles*, 64 F.3d 1315 (9th Cir. 1995). . . . . . . . . . . . . . . . 8, 9, 11

5

*Allen v. City Of Los Angeles*, 66 F.3d 1052 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . 6

6

*Anderson v. Creighton*, 483 U.S. 635 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

9

*Butz v. Economou*, 438 U.S. 478 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

10

*City of Simi Valley v. Superior Court*, 111 Cal. App. 4th 1077 (2003). . . . . . . . . . . . . . . . 14, 15

11

*Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv. Inc.*, 911 F. 2d 242
(9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

12

13

*Edson v. City of Anaheim*, 63 Cal. App. 4th 1269 (1998). . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

14

*Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130 (9th Cir. 2003). . . . . . . . . . . . . . . . 10

15

*Florida v. Bostick*, 501 U.S. 429 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16

*Forrester v. San Diego*, 25 F.3d 804 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

17

*Foster v. City of Fresno*, 392 F. Supp. 2d 1140 (E.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . 14

18

*Franklin v. Fox,* 312 F.3d 423 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

19

*Gallegos v. City of Los Angeles* 308 F.3d 987 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . 7

20

*Garcia v. United States*, 826 F.2d 806 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

21

*Gilmore v. Superior Ct.*, 230 Cal. App. 3d 416 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

22

*Graham v. Connor*, 490 U.S. 386 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

23

*Green v. City & County of San Francisco* 751 F.3d 1039 (9th Cir. 2014). . . . . . . . . . . . . 4, 11

24

*Hunter v. Bryant*, 502 U.S. 224 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25

*Ingram v. City of Los Angeles*, 418 F. Supp. 2d 1182 (C.D. 2006). . . . . . . . . . . . . . . . . . . . . 6

26

*James v. Rowlands*, 606 F.3d 646 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

27

*Jones v. Kmart Corp.*, 17 Cal. 4th 329 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28

*Knox v. Southwest Airlines*, 124 F.3d 1103 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . 11

1   *Malley v. Briggs*, 475 U.S. 335 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

2   *Martinez v. County of Los Angeles*, 47 Cal. App. 4th 334 (1996). . . . . . . . . . . . . . . . . . . . . . 14

3   *Motley v. Parks,* 432 F.3d 1072 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

4   *Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004). . . . . . . . . . . . . . . . . . . . . . . . . 15

5   *NL Indus., Inc. v. Kaplan*, 792 F. 2d 896 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6   *Papasan v. Allain*, 478 U.S. 265 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7   *Pearson v. Callahan*, 129 S. Ct. 808 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

8   *Pennsylvania v. Mimms,* 434 U.S. 106 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

9   *People v. Russell,* 81 Cal. App. 4th 96 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10  *Reynolds v. City of San Diego*, 84 F.3d 1162 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . 12

11  *Reynolds v. County of San Diego*, 858 F. Supp. 1064 (S.D. Cal. 1994). . . . . . . . . . . . . . . . . 14

12  *Saucier v. Katz*, 533 U.S. 194 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

13  *Tennessee v. Garner,* 471 U.S. 1 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

14  *Texas v. Brown,* 460 U.S. 730 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15  *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075 (9th Cir. 2009). . . . . . . . . . . . . . . . 10

16  *U.S. v. Garcia-Acuna*, 175 F.3d 1143 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

17  *United States Liab. Ins. Co. v. Haidinger-Hayes*, 1 Cal. 3d 586 (1970). . . . . . . . . . . . . . . . . 15

18  *United States v. Alvarez*, 899 F.2d 833 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

19  *United States v. Buffington*, 815.F .2d 1292 (9th Cir.1987). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

20  *United States v. Cortez,* 449 U.S. 411 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21  *United States v. Guzman-Padilla*, 573 F.3d 865 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . 8, 11

22  *United States v. Hatley*, 15 F.3d 856 (9th Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

23  *United States v. Hensley*, 469 U.S. 221 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

24  *United States v. Lopez-Soto,* 205 F.3d 1101 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . 4

25  *United States v. Miguel,* 368 F.3d 1150 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

26  *United States v. Shareef*, 100 F.3d 1491 (10th Cir.1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

27  *United States v. Sharpe*, 470 U.S. 675 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28

1

*Washington v. Lambert,* 98 F.3d 1181 (9th Cir.1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

2

*Wilson v. Layne*, 526 U.S. 603 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

3

4

Statutes and Rules

5

42 United States Code Section 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 13

6

California Civil Code Section 52.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

7

California Penal Code Section 835a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

8

California Penal Code Section 836.5(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

9

Federal Rule of Civil Procedure 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 22, 2019, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom F, 15th Floor, of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, defendants County of Contra Costa ("County"), Kyle Emley ("Emley") and Brandon Gant ("Gant") (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), will and hereby do move this Court for an order dismissing plaintiffs Brian Hofer and Jonathan Hofer's ("Plaintiffs") Complaint ("COM") (Doc. No. 1), as it fails to allege sufficient facts to state a claim upon which relief can be granted.

This motion is based on this Notice, the Memorandum of Points and Authorities, the papers and records on file herein, and any other evidence as may be submitted on this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiffs' COM allege a federal and state civil rights claim as well as several state law tort claims against the County and County sheriff deputies and a sergeant arising out of a high risk vehicle enforcement stop on November 25, 2018, due the Plaintiffs operating a reported stolen vehicle.  As a result of the high risk vehicle enforcement stop and subsequent detention, Plaintiffs COM alleges causes of action for: (1) 42 U.S.C. § 1983 violations of their civil rights under the Fourth Amendment against Emley, Gant and Contra Costa County Sheriff, Sergeant William Odom ("Odom"); (2) California law civil rights violation under the Bane Act against Defendants; (3) assault and battery against Defendants; (4) false imprisonment against Defendants; (5) intentional infliction of emotional distress against Defendants; and (6) negligence against all Defendants.

Plaintiffs' COM establishes that the vehicle enforcement stop and subsequent detention were lawful.  As such, Defendants are not liable to Plaintiffs for any alleged civil rights violations for tort claims that arise from this incident.  For these reasons, Plaintiffs' COM should be dismissed without leave to amend.

## II.   ISSUES TO BE DECIDED

1.   Did Emley and Gant have reasonable suspicion to stop and detain Plaintiffs?

2.   Are Emley and Gant entitled to qualified immunity, since it was not clearly established that they should have know that Plaintiffs' vehicle was improperly left on the list of stolen vehicles?

3.   Can Plaintiffs maintain a Bane Act claim if there is no underlying constitutional violation?

4.   Were Emley and Gant's actions privileged for the purpose of denying Plaintiffs' state law tort claims?

## III.   SUMMARY OF RELEVANT FACTS

On November 25, 2018, Plaintiffs were riding in a reported stolen car that plaintiff Brian Hofer had rented from defendant Getaround Inc. when they were stopped by Deputy Gant.  Doc. No. 1, 3:26-4:3.  The car Plaintiffs were driving had been reported stolen to San Jose Police Department in October 2018, and came up as stolen in Gant's automated license plate reader ("ALPR").  *Id.*, 6:3-4; 7:14-19.  After identifying it as a stolen car, Gant followed Plaintiffs on I-80 near San Pablo, activated his lights and siren and told them over the loudspeaker to exit the freeway.  *Id.*, 4:3-5.  Once off the freeway, Gant was joined by Deputy Emley and Sergeant Odom.  *Id.*, 4:6-11.  Plaintiffs stopped the car.  With his gun drawn, Gant ordered plaintiff Brian Hofer, the driver, out of the car, handcuffed him and placed him in the back of Gant's patrol car.  Once plaintiff Brian Hofer was placed in the patrol car, Emley and Gant directed plaintiff Jonathan Hofer out of the car, handcuffed him and placed him in the back of Emley's patrol car.  *Id.*, 5:2-3.  Gant, Emley and Odom had their guns drawn on plaintiff Jonathan Hofer prior to handcuffing him while they were directing him out of the car. *Id.*, 5:2-3.

Once Plaintiffs were secured, the officers searched the car and the contents of the car. *Id.*, 5:20-25.  Through an investigation, the officers learned that the car had been reported stolen, but had been recovered and never removed from the list of stolen cars, and that plaintiff Brian Hofer had lawfully rented the car.  *Id.*, 6:20-21; 7:14-23; 8:5-9.  Upon learning that the

1  car was not stolen, the officers removed Plaintiffs' handcuffs and allowed them to leave.  *Id.*,

2  6:22-7:3.  Plaintiffs' detention lasted approximately forty minutes.  *Id.*, 6:22-24.

3  **IV.     LEGAL ARGUMENT**

4        **A.     Legal Standard**

5        A motion to dismiss under Rule 12(b)(6) should be granted if Plaintiff's complaint fails

6  to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*,

7  556 U.S. 662, 678 (2009).  All material allegations in the complaint will be taken as true and

8  construed in the light most favorable to the plaintiff.  *NL Indus., Inc. v. Kaplan*, 792 F. 2d 896,

9  898 (9th Cir. 1986).

10        However, a complaint must offer "more than labels and conclusions, and a formulaic

11  recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550

12  U.S. 544, 555 (2007).  "[C]ourts 'are not bound to accept as true a legal conclusion couched as

13  a factual allegation.'"  *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  If a

14  plaintiff's allegations do not bring his "claims across the line from conceivable to plausible,

15  [his] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.  "A claim has facial

16  plausibility when the plaintiff pleads **factual content** that allows the court to draw the

17  reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556

18  U.S. at 678 (emphasis added).  "The plausibility standard is not akin to a 'probability

19  requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully."  *Id.*

20  The standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me

21  accusation."  *Id.*  Thus, a complaint that offers "'naked assertion[s]' devoid of 'further factual

22  enhancement'" is insufficient.  *Id.* (quoting *Twombly*, 550 U.S. at 557).

23        When granting a motion to dismiss, a court is not required to grant leave to amend if

24  amendment would be futile.  *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*

25  *Inc.*, 911 F. 2d 242, 247 (9th Cir. 1990).

26  //

27  //

28  //

**B.  There is No Fourth Amendment Violation for Detaining Plaintiffs Because License Plate From a Stolen Car Provides Reasonable Suspicion for a Traffic Stop to Investigate a Felony.**

**1.  A Report of a Stolen Car Creates Reasonable Suspicion of Criminal Activity Warranting Further Investigation.**

The legal standard for an investigatory traffic stop is that an officer must have reasonable suspicion that criminal activity is afoot.  *United States v. Lopez-Soto,* 205 F.3d 1101, 1104 (9th Cir. 2000).  Reasonable suspicion exists when an officer is aware of specific articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion.  *United States v. Cortez,* 449 U.S. 411, 418 (1991).  The assessment of particularized suspicion is based on the totality of circumstances.  *Id*.  An unconfirmed hit on the ALPR does not, alone, form the reasonable suspicion necessary to support an investigatory detention.  *Green v. City & County of San Francisco* 751 F.3d 1039, 1045 (9th Cir. 2014).

Plaintiffs' complaint alleges that the car they were driving was reported stolen at the time of they were stopped and that information was accurately conveyed to Deputy Gant through the ALPR.  Plaintiffs do not dispute this.  This information provided Deputy Gant with reasonable suspicion that Plaintiffs were driving a stolen car warranting further investigation.

Stopping a car and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment; the governmental interest in investigating an officer's reasonable suspicion, based on specific articulable facts, may outweigh the Fourth Amendment interest of the driver and passengers in remaining secure from the intrusion.  *United States v. Hensley*, 469 U.S. 221, 226 (1985).  An officer is not liable for acting on information supplied by another officer, even if that information later turns out to be wrong, if he has an objectively reasonable, good-faith belief that he is acting pursuant to proper authority. *Motley v. Parks,* 432 F.3d 1072, 1081-82. (9th Cir. 2005)(*en banc*). The lynchpin is whether the officer's reliance on the information was objectively reasonable. *Id*. at 1082.

//

It was objectively reasonable for Deputy Gant to rely on the information provided by the ALPR, which Plaintiffs concede accurately conveyed that their car was reported stolen. Based on that information, he had reasonable suspicion, based on articulable facts that Plaintiffs were in possession of a stolen car which provided the basis for him to stop and detain Plaintiffs.

### 2. A Mistake of Fact That the Car was not Stolen Does Not Undermine Reasonable Suspicion For An Investigatory Traffic Stop.

The law is clear that a good faith mistake of fact will not render a traffic stop unconstitutional if the stop had been constitutional if the facts had been as believed. In the context of ruling on the legality of a traffic stop in a criminal smuggling case, the court upheld the legality of the stop, finding that police officers had a reasonable suspicion to support a traffic stop where the officers mistakenly believed the defendant was driving an unregistered vehicle. *United States v. Miguel,* 368 F.3d 1150 (9th Cir. 2004). The mistaken information was obtained from a database showing the registration to be expired. In that case, the Ninth Circuit clearly distinguished between mistakes of law and mistakes of fact and their respective effects on the legality of a traffic stop. The court held that "a mere mistake of fact will not render a stop illegal, if the objective facts known to the officer gave rise to a reasonable suspicion that criminal activity was afoot [citations]. An officer's correct understanding of the law, together with a good-faith error regarding the facts, can establish reasonable suspicion [citations]." *Id.* at 1153-4.

In *U.S. v. Garcia-Acuna*, 175 F.3d 1143, 1147 (9th Cir. 1999), the court found that a mismatched plate can create a suspicion of criminal conduct. A mistaken premise can furnish grounds for a *Terry* stop, if the officers do not know that it is mistaken and are reasonable in acting upon it. *U.S. v. Garcia-Acuna*, 175 F.3d at 1147 citing *United States v. Shareef*, 100 F.3d 1491, 1505 (10th Cir.1996); see also *United States v. Hatley*, 15 F.3d 856, 859 (9th Cir.1994) (holding that the search of a car later determined to be inoperable was reasonable under the "vehicle exception" to the warrant requirement because the officers reasonably believed the car was mobile). In *Garcia-Acuna*, the Ninth Circuit explained that because

nothing in the record indicated that the law enforcement officer or the dispatcher acted unreasonably, the district court should have taken an erroneous license report, and the officer's food faith reliance on it, into consideration in determining whether there was reasonable suspicion for a traffic stop.

Summary judgment was granted in favor of defendant officers in *Ingram v. City of Los Angeles*, 418 F. Supp. 2d 1182 (C.D. 2006) where the officers stopped a car based on the mistaken belief that the car was stolen. In *Ingram*, officers ran the plaintiff's plate on the computer terminal in their car, and the computer displayed "inquiry match," including victim information, even though the car was not stolen. *Id*. at 1186-7. Because the vehicle triggered an inquiry match on the state-wide stolen vehicle system ("SVS"), and because the match referenced a "victim," the court found that the investigating officer reasonably believed that a crime had been committed, even though the suspicion was founded on a mistake about whether cars that are not stolen would ever trigger a match on the state-wide SVS and reference a "victim." *Id*. at 1186-7. This decision provides guidance that stopping a suspected stolen car is not a constitutional violation where there is a reasonable, albeit mistaken, belief that the car is involved in criminal activity. *Id*. at 1189. Before stopping Plaintiff, based on the ALPR, Deputy Gant had a reasonable, good faith mistaken belief that the car Plaintiffs were driving was stolen. Therefore, Deputy Gant had reasonable suspicion to stop Plaintiffs.

### 3. A High-Risk Felony Traffic Stop Involving the Pointing of Guns and Handcuffing Suspects Based on a Reasonable Suspicion that a Suspect is Driving a Stolen Car does not Convert the Investigatory Detention into an Arrest Requiring Probable Cause.

The whole point of an investigatory stop, as the name suggests, is to allow police to investigate. The law is clear that an investigative detention does not automatical1y become an arrest when officers draw their guns. See, e.g., *United States v. Buffington*, 815.F .2d 1292, 1300 (9th Cir.1987) (no arrest when defendants were forced from their car and made to lie down on the pavement at gunpoint). Nor does handcuffing always convert a stop into an arrest. See *Allen v. City Of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995) (pointing a weapon at a suspect, ordering him to lie on the ground, handcuffing him, and placing him in a vehicle for

1   questioning did not convert an investigatory detention into an arrest). Nor does the length of

2   the plaintiffs detention automatically convert it into an arrest. There is no set time limit for a

3   permissible investigative stop; the question is whether the police diligently pursued a means of

4   investigation reasonably designed to confirm or dispel their suspicions quickly. *United States*

5   *v. Sharpe*, 470 U.S. 675, 686-688 (1985); *People v. Russell,* 81 Cal. App. 4th 96 (2000).

6   Whether a police detention is an arrest or an investigatory stop is a fact-specific inquiry,

7   *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir.1996), guided by the general Fourth

8   Amendment requirement of reasonableness, *Texas v. Brown,* 460 U.S. 730, 739 (1983). This

9   inquiry requires us to consider "all the circumstances surrounding the encounter" between the

10  individual and the police, *Florida v. Bostick*, 501 U.S. 429, 439 (1991), "by evaluating not

11  only how intrusive the stop was, but also whether the methods used [by police] were

12  reasonable given the spec/fie circumstance. . . ."  *Lambert,* 98 F.3d at 1185.

13      In *Gallegos v. City of Los Angeles* 308 F.3d 987 (9th Cir. 2002), the plaintiff was

14  detained based on a citizen phone call reporting a suspicion that someone was violating a

15  restraining order. Mr. Gallegos argued that his detention went beyond a valid investigatory

16  stop based on the facts that he was ordered from his truck at gunpoint, handcuffed, put in the

17  back of a patrol car for between forty-five minutes and one hour, and that less intrusive options

18  were available to police. *Id*. at 989. Gallegos focused on each of these facts in isolation, citing

19  to cases where the presence of similar factors contributed to the court's conclusion that an

20  arrest had taken place. *Id*. at 991. However, the Ninth Circuit found that under the totality of

21  the circumstances, the detention did not amount to an arrest. *Id*. at 991-2. The court noted "it is

22  unfortunate that an innocent man, in the wrong place at the wrong time, was inconvenienced. .

23  . .  But by the same token, this investigative stop worked as it should. . . and resulted in

24  Gallegos's prompt vindication." *Id.*  Here, Plaintiffs allege that they were detained for

25  approximately forty minutes while Deputy Gant investigated the stolen car.  As soon as it was

26  determined that Plaintiffs had lawfully rented the car, they were released from handcuffs, an

27  explanation was provided to them and they were free to leave. Accordingly, there was no

28  arrest.

---

**C.     There was no Excessive Force Because a High-Risk Traffic Stop Involving the Pointing of Guns and Handcuffing a Suspect is a Reasonable Use of Force Where There is Reasonable Suspicion that a Suspect is Driving a Stolen Car.**

In *Graham v. Connor*, 490 U.S. 386, 396-397 (1989), the Supreme Court explained that a  police officer is not liable for force that is reasonable from the perspective of the officer. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. The Ninth Circuit and the Supreme Court have repeatedly recognized that officers in potentially dangerous circumstances are entitled to protect themselves by drawing and pointing their weapons at a suspect who may pose a threat, until the suspect demonstrates she is not a threat. "Although approaching a suspect with drawn weapons are extraordinary measures. . . [they are] justified. . . as a reasonable means of neutralizing danger to police and innocent bystanders." *United States v. Alvarez*, 899 F.2d 833, 838 (9th Cir. 1990); see also *United States v. Guzman-Padilla*, 573 F.3d 865, 884 (9th Cir. 2009); *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1320 (9th Cir. 1995). As discussed above, *Graham* is not a rigid three-part inquiry. The *Graham* court did not limit the inquiry to the factors considered in that case. Instead, the court instructed that the jury should consider whether the totality of the circumstances justifies a particular sort of seizure. *Forrester v. San Diego,* 25 F.3d 804, 806, (9th Cir. 1994), quoting *Tennessee v. Garner,* 471 U.S. 1, 8-9 (1985).

In *Pennsylvania v. Mimms,* 434 U.S. 106 (1977) the United States Supreme Court specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. "According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, Police Officer Shootings-A Tactical Evaluation, 54 J.Crim.L.C. & P.S. 93 (1963)." *Adams v. Williams,* 407 U.S. 143, 148 n. 3 (1972).

The Ninth Circuit allows "intrusive and aggressive police conduct without deeming it an arrest ... when it is a reasonable response to legitimate safety concerns on the part of the investigating officers." *Washington v. Lambert,* 98 F.3d 1181, 1186 (9th Cir.1996) *accord*

1    *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1320 (9th Cir.1995) ("It is well settled that

2    when an officer reasonably believes force is necessary to protect his own safety or the safety of

3    the public, measures used to restrain individuals, such as stopping them at gunpoint and

4    handcuffing them, are reasonable.")

5           In this case, Deputy Gant was investigating a serious crime: a stolen car and possibly

6    other criminal activity that would motivate the driver to steal the car.  Under *Pennsylvania*

7    Deputy Gant's traffic stop of Plaintiffs to investigate a reported stolen vehicle presented a

8    safety concern for him, the other officers and the public at large.  Such a safety concern

9    warranted the officers drawing their guns and temporarily handcuffing Plaintiffs under

10   *Washington*.

11          Based on the above, Plaintiffs' first cause of action for 42 U.S.C. § 1983 violations of

12   their civil rights under the Fourth Amendment against Emley, Gant and Odom fails.  There is

13   no dispute that the car Plaintiffs were driving was reported stolen and was not removed from

14   the stolen car list prior to their stop.  Deputy Gant observed the reported stolen car and had a

15   reasonable suspicion of criminal activity warranting stopping Plaintiffs to investigate.  Further,

16   because traffic stops, especially related to stolen cars, are high risk stops, Gant and the other

17   officers were warranted in drawing their guns and handcuffing the Plaintiffs while they

18   conducted an investigation.  Based on this, Plaintiffs' Fourth Amendment rights were not

19   violated and their first cause of action should be dismissed with prejudice.

20          **D.      Deputy Gant and Deputy Emley are Entitled to Qualified Immunity.**

21          Even if the court finds that Deputy Gant somehow lacked reasonable suspicion to stop

22   Plaintiffs and violated their Fourth Amendment rights, Plaintiffs' 42 U.S.C. § 1983 claims for

23   false arrest and excessive force fail because the deputies are entitled to qualified immunity.

24   In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court identified two inquiries in

25   determining qualified immunity: (1) whether the defendant violated a constitutional right, and

26   then (2) whether it would be clear to a reasonable officer that the right was clearly established.

27   The Court subsequently held in *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) that courts

28   may grant qualified immunity on the basis of the "clearly established" prong alone, without

first determining whether any right had been violated.  Pearson also reaffirms that "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Id*. at 815.  Accordingly, a Court may grant qualified immunity if either "the facts plaintiff alleges do not make out a violation of a constitutional right, or if the right at issue was not clearly established at the time of defendant's alleged misconduct."  *James v. Rowlands*, 606 F.3d 646, 651 (9th Cir. 2010), quoting *Pearson*, 129 S. Ct. at 816, 818.

Whether a right was clearly established at the time of the defendant's alleged misconduct is a question of law.  *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009).  A right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Saucier*, 533 U.S. at 202, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   A court evaluating a claim of qualified immunity must "determine whether the preexisting law provided the defendants with fair warning that their conduct was unlawful."  *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1137 (9th Cir. 2003).  Moreover, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."  *Wilson v. Layne*, 526 U.S. 603, 615 (1999).  Accordingly, Plaintiffs cannot simply assert a right to be free from false arrest and/or excessive use of force.  Instead, Plaintiffs must point to the specific action undertaken by Deputy Gant and Deputy Emley they claim deprived them of their right to be free from unreasonable seizure, and demonstrate that these actions were clearly prohibited under law existing at the time of their detention.

Reasonableness under the second step of the qualified immunity analysis is distinct from the reasonableness analysis to determine whether there was a constitutional violation in the first place: "If an official could reasonably have believed her actions were legal in light of clearly established law and the information she possessed at the time, she is protected by qualified immunity." *Franklin v. Fox,* 312 F.3d 423 (9th Cir. 2002), (citing *Saucier*). Qualified immunity is an extremely deferential standard that "gives ample room for mistaken

1  judgments by protecting all but the plainly incompetent or those who knowingly violate the

2  law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335,

3  343 (1986) (internal quotation marks omitted); *Knox v. Southwest Airlines*, 124 F.3d 1103,

4  1107 (9th Cir. 1997).  It encompasses factual mistakes. *Butz v. Economou*, 438 U.S. 478, 507

5  (1978).

6                       **1.      It Was Unclear to a Reasonable Officer that it was Unlawful to Rely**
                           **on an Accurate ALPR Alert as the Basis for Reasonable Suspicion to**
7                       **Detain Plaintiffs and Therefore Deputy Gant and Deputy Emley are**
                           **Entitled to Qualified Immunity.**

8          The Ninth Circuit has not ruled on the legal question of whether an accurate ALPR alert

9  provides reasonable suspicion for a traffic stop.  The Ninth Circuit in *Green* found that

10  unconfirmed ALPR hits do not, alone, form reasonable suspicion necessary to support an

11  investigatory detention.  *Green* 751 F.3d at 1045.  However, here, Plaintiffs' car was still listed

12  as stolen, and that information was accurately conveyed to Deputy Gant.  There is no legal

13  authority suggesting Deputy Gant and Deputy Emley could have known that they were

14  violating Plaintiffs' rights by detaining them.  The present case is complicated by the mistake

15  of fact that the reported stolen car had been returned but not removed from the stolen car

16  database.  Under the totality of these circumstances it would not be clear to an officer in

17  Deputy Gant and Deputy Emley's position that they could not rely on the ALPR alert to carry

18  out an investigation.  Therefore, Deputy Gant and Deputy Emley are entitled to qualified

19  immunity in this case.

20                       **2.      It was Unclear to a Reasonable Officer that it was Unlawful to**
                           **Perform A High-Risk Stop of a Car that the Officer had a**
21                       **Reasonable Suspicion to Believe was Stolen.**

22          Where an officer has reasonable suspicion to stop a car to investigate if the car is stolen,

23  a high-risk stop is justified by objective concerns for officer safety. The Ninth Circuit and the

24  Supreme Court recognize that officers in potentially dangerous circumstances are entitled to

25  protect themselves by drawing and pointing their weapons at a suspect who may pose a threat.

26  *Alvarez*, 899 F.2d at 838;  *Guzman-Padilla*, 573 F.3d at 884; *Alexander*, 64 F.3d at 1320.

27  Therefore it would not be clear to a reasonable officer that it was unlawful to perform a

28

---

1  high-risk stop, drawing a weapon and using handcuffs, when stopping a reported stolen car.

2  There is no clear rule of law to the contrary. Deputy Gant and Deputy Emley are entitled to

3  qualified immunity for the high risk stop, which included pointing guns in the direction of the

4  suspects and handcuffing them during the detention.

5          **E.**      **Plaintiffs' Civil Code Section 52.1 Claim Fails, as there was No Constitutional Violation.**

6        California Civil Code section 52.1 prohibits conduct that interferes by threats,

7  intimidation, or coercion, or attempts to interfere by threats, intimidation or coercion, with the

8  exercise or enjoyment by any individual or individuals of rights secured by the Constitution or

9  laws of the United States, or of the rights secured by the Constitution or laws of this state.  Cal.

10  Civil Code § 52.1(a).

11        Plaintiffs' second cause of action alleges that Defendants violated Civil Code section

12  52.1 by the use of excessive force and an unreasonable search.  Plaintiffs must show both

13  "threats, intimidation and coercion" and an interference or attempted interference with a

14  constitutional right.  See *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998) (Civ. Code § 52.1

15  requires "an attempted or completed act of interference with a legal right, accompanied by a

16  form of coercion").  Civil Code section 52.1 does not provide any substantive protections;

17  instead it enables individuals to sue for violations of constitutional or statutory rights set forth

18  elsewhere when those rights have been suppressed by "threats, intimidation, or coercion."

19  *Reynolds v. City of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996).

20        There are no allegations in the complaint that some separate intent or act of threat,

21  intimidation, or coercion caused the alleged excessive force violations.  To the extent that

22  Plaintiffs claim the drawing of weapons and use of handcuffs during their detention was an

23  excessive use of force, they conflate the separate elements of Civil Code section 52.1 into one.

24  Plaintiffs claim that the Defendants interfered with their rights by the use of excessive force.

25  However, officers are privileged under California law to use reasonable force to make an

26  arrest, prevent an escape, overcome resistance, or otherwise in discharge of their duties.  Cal.

27  Pen. Code § 835a.  California courts have held that the Penal Code privileges under California

1   law set the same standard as the federal Fourth Amendment for the use of force by peace

2   officers.  See, e.g., *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274 (1998).  Therefore,

3   to the extent that Plaintiffs' Civil Code section 52.1 claim is based on the police using force to

4   allegedly interfere with Plaintiffs' rights to be free from unreasonable seizure (false arrest),

5   then Plaintiff's Civil Code section 52.1 claim fails for the same reasons set forth above that

6   their federal 42 U.S.C. § 1983 false arrest and excessive force claims fail.

7        Based on the above, Plaintiffs' second cause of action for civil rights violation under

8   Civil Code section 52.1 should be dismissed with prejudice.

9        **F.**     **Plaintiffs' State Law Tort Claims for Assault and Battery, False**
**Imprisonment, Intentional Infliction of Emotional Distress and Negligence**
10           **Should be Dismissed.**

11        The allegations underlying Plaintiffs' complaint are that the Deputy Gant, Deputy

12   Emley and Sergeant Odom detained Plaintiffs without reasonable suspicion and used

13   unreasonable force to do so. Plaintiffs have no viable separate claims for assault and battery,

14   false imprisonment, intentional infliction of emotional distress or negligence.  Plaintiffs should

15   not be permitted to proceed under state law theories of liability that are superfluous, add

16   nothing, and risk confusing the jury.

17           **1.**     **These Allegations are Superfluous and Confusing Because the Sole**
**Applicable Determination is Whether The Officers' Actions Were**
18               **Privileged.**

19        The actions of Deputy Gant, Deputy Emley and Sergeant Odom and any other Contra

20   Costa County Sheriff deputy involved in this incident were privileged under California Penal

21   Code Sections 835a, 836.5(b) unless they used unreasonable force, or acted without reasonable

22   suspicion to make a high-risk traffic stop.  Conduct of the police is judged by the same

23   standards for both the federal and state claims. *Edson*, 63 Cal. App. 4th at 1274.  Because the

24   privileges apply — i.e., for reasons set forth above, reasonable suspicion existed and the force

25   used was reasonable — state law claims based on assault and battery, false imprisonment,

26   intentional infliction of emotional distress and negligence should also be dismissed with

27   prejudice.

28   *//*

1    Peace officers are privileged under California law to use reasonable force to make an

2    arrest, prevent an escape, or overcome resistance.  See Cal. Penal Code § 835a.  This privilege

3    applies to claims of liability under any tort theory, including negligence or assault.  "A

4    privileged act is by definition one for which the actor is absolved of any tort liability, whether

5    premised on the theory of negligence or of intent."  *Gilmore v. Superior Ct.*, 230 Cal. App. 3d

6    416, 421 (1991).  Thus, "if, in a particular case, the facts establish a justifiable [use of force]

7    under the Penal Code, there is no civil liability."  *Id*. at 422; cf. *Garcia v. United States*, 826

8    F.2d 806 (9th Cir. 1987) (where border patrol agent's force was "justified" under Arizona law,

9    there was no liability even if conduct was negligent).

10    The test for determining whether California Penal Code section 835a applies is exactly

11    the same test used to determine whether or not an officer used unreasonable force under

12    federal law.  See *Martinez v. County of Los Angeles*, 47 Cal. App. 4th 334, 349-50 (1996);

13    *Foster v. City of Fresno*, 392 F. Supp. 2d 1140, 1159 (E.D. Cal. 2005); *Reynolds v. County of*

14    *San Diego*, 858 F. Supp. 1064, 1074-75 (S.D. Cal. 1994).  A peace officer's decision to use

15    force in the course of his or her duties is judged by a single legal standard: whether that use of

16    force was objectively reasonable in the totality of the circumstances presented to the officer.

17    Once that determination is adjudged, the negligence and intentional infliction of emotional

18    distress causes of action have no separate or independent significance, and they should be

19    eliminated from the case.  See *City of Simi Valley v. Superior Court*, 111 Cal. App. 4th 1077,

20    1083-84 (2003) (holding that where officers' use of force was found to be objectively

21    reasonable under the Fourth Amendment, that finding barred the plaintiffs' negligence cause

22    of action).  Similarly, if Deputy Gant, Deputy Emley and Sergeant Odom had reasonable

23    suspicion to detain Plaintiffs, not only will that defeat Plaintiff's federal false arrest and

24    excessive force claims, but it also will defeat all of Plaintiffs' state-law claims as they relate to

25    the decision to detain.

26    As such, Plaintiffs' third, fourth, fifth and sixth causes of action should be dismissed

27    with prejudice.

28

### 2. Plaintiffs' Negligence Theory Against Defendants Fails Because there is No Duty to Engage Particular Tactics Investigating a Stolen Car or Making a High-Risk Stop.

In addition to the above grounds for dismissing Plaintiffs' state law tort claims, Plaintiffs cannot state a negligence cause of action against Defendants.  Plaintiffs are required to show three elements for their negligence cause of action: (1) a legal duty to use due care; (2) a breach of that duty; and (3) the breach as the proximate or legal cause of the resulting injury. See *United States Liab. Ins. Co. v. Haidinger-Hayes*, 1 Cal. 3d 586, 594 (1970).

Plaintiffs cannot establish that Defendants breached a duty to them.  Under California law, Defendants are under no duty to use particular tactics when either investigating a stolen car or engaging a high-risk traffic stop.  Under *Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004), peace officers' tactical decisions preceding a use of force cannot give rise to negligence liability:

> [T]he conduct of the police – [Corporal] Woodward's decisions how to deploy his officers at the scene, the efforts made in an attempt to defuse the situation as safely as possible, and other such factors – cannot subject appellants [officers and their public entity employer] to liability.  For these reasons, finding a tort duty and submitting to the jury the question of whether police decisions fell below the standard of care, was error.

*Id*. at 1097.  Notably, the court made this decision even where there was a basis for finding the use of force was unreasonable.  Other California courts agree that a plaintiff may not assert a negligence theory against officers who use force as part of their duties; the only basis for officer liability is the use of unreasonable force.  *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274 (1998) ("We share the view … that  the officer in the first instance is the judge of the manner and means to be taken in making an arrest.  Unless a plaintiff can show that unnecessary force was used, courts will protect the officer.") (internal quotation marks and citation omitted); see also *City of Simi Valley v. Superior Court*, 111 Cal. App. 4th 1077, 1086 (2003) (where officers' use of force had already been determined to be objectively reasonable under federal law, collateral estoppel barred a negligence action).

Here, Deputy Gant had no duty to Plaintiffs to seek additional information regarding the reported stolen car before stopping them.  Nor did he have a duty to Plaintiffs to perform a

traffic stop using less intrusive tactics.  Instead, the legal issue that will decide this case is whether the conduct of Deputy Gant, Deputy Emley and Sergeant Odom violated Plaintiffs' constitutional right to be free from unreasonable seizure.  And that issue is determined by the court's analysis of the objective reasonableness of the officers' conduct in light of the information they had at the time.

As such, Plaintiffs' sixth cause of action should be dismissed with prejudice.

## V.    CONCLUSION

Law enforcement officers can make a high-risk stop of a reported stolen car in order to investigate criminal activity. Objectively reasonable officers have legitimate concerns for their safety while making a traffic stop of a reported stolen car.  Under these circumstances, the car may be stolen and its occupants on a criminal errand.  It is undisputed that the car Plaintiffs were driving was on the list of reported stolen cars.  Deputy Gant had an objectively reasonable suspicion that the car Plaintiffs were driving was stolen, so he made a high-risk traffic stop to investigate.  Because traffic stops, especially related to stolen cars, are high risk stops, Deputy Gant, Deputy Emley and Sergeant Odom were warranted in drawing their guns and handcuffing the Plaintiffs while they conducted an investigation.  Only upon conducting an investigation was it learned that the car had been returned, but not removed from the stolen car database.  Upon learning that the car was no longer stolen, Plaintiffs were released.  This course of conduct did not result in any civil rights violations, and Plaintiffs' complaint against Deputy Gant, Deputy Emley and the County of Contra Costa should be dismissed with prejudice.

DATED:  July 15, 2019

SHARON L. ANDERSON
COUNTY COUNSEL


By: _____/s/ Dylan Radke_____
        DYLAN RADKE
        Deputy County Counsel
        Attorneys for Defendants
        COUNTY OF CONTRA COSTA,
        KYLE EMLEY and BRANDON GANT