UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRIAN HOFER, et al.,

Plaintiffs,

v.

KYLE EMLEY, et al.,

Defendants.

Case No.19-cv-02205-JSC

**ORDER RE: DEFENDANT GETAROUND, INC.'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION; DEFENDANTS' MOTIONS TO DISMISS**

Re: Dkt. Nos. 17, 43, 45, 46

Brian Hofer and Jonathan Hofer sue City of San Jose ("San Jose" or "the City"), County of Contra Costa ("the County") and Deputy Sheriffs Kyle Emley, Brandon Gant, and William Odom (collectively, "Contra Costa Defendants"), Getaround, Inc. ("Getaround"), and Vigilant Solutions, LLC ("Vigilant"), alleging civil rights violations and state law tort claims arising out of a November 2018 traffic stop.[1] (Dkt. No. 38.)[2] Now before the Court are Getaround's motion to compel arbitration and dismiss or stay litigation, (Dkt. No. 17), Contra Costa Defendants' motion to dismiss, (Dkt. No. 43), San Jose's motion to dismiss, (Dkt. No. 45), and Vigilant's motion to dismiss, (Dkt. No. 46). After careful consideration of the parties' briefing, and having had the benefit of oral argument on September 12, 2019, the Court: GRANTS Getaround's motion to compel arbitration and STAYS this action as to Getaround; GRANTS in part and DENIES in part Contra Costa Defendants' motion to dismiss; GRANTS San Jose's motion to dismiss; and GRANTS Vigilant's motion to dismiss.

//

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (*See* Dkt. Nos. 5, 16, 23, 32, 35, and 48.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

# BACKGROUND

## I. The Parties

### A. Plaintiffs

Plaintiffs Brian Hofer ("Brian") and Jonathan Hofer ("Jonathan") are brothers. (Dkt. No. 38 at ¶ 15.) They both reside in Oakland, California. (*Id.* at ¶¶ 2-3.) Brian is "a surveillance reform activist and Chair of the City of Oakland's Privacy Commission." (*Id.* at ¶ 31.)

### B. Defendants

The County is a municipality that "owns, operates, manages, directs, and controls the Contra Costa County Sheriff's Office," which employed Deputy Sheriffs Kyle Emley, Brandon Gant, and William Odom "at all times relevant to this action." (*Id.* at ¶ 8.) San Jose is a municipality that administers the San Jose Police Department ("SJPD"). (*Id.* at ¶ 9.) Getaround "is a car sharing platform" that facilitates car rentals between "private vehicle owners" and "other private parties." (*Id.* at ¶ 11.) "Getaround also provides its own vehicles to the platform for rental by private parties." (*Id.*) Vigilant manufactures an automated license plate reader ("ALPR") used by the Contra Costa County Sheriff's Office. (*Id.* at ¶ 10.)

## II. Complaint Allegations

Brian rented a Getaround-owned car from Getaround on November 21, 2018 to travel with Jonathan "to visit family for the Thanksgiving holiday." (*Id.* at ¶¶ 11, 15.) On November 25, 2018, Plaintiffs were returning to Oakland in the rental car when they were stopped near San Pablo, California by Contra Costa Sheriff's Deputy Brandon Gant, who had tailed Plaintiffs "for a period of time" before turning on his overhead lights and directing Plaintiffs "over the loudspeaker to exit the freeway." (*Id.* at ¶ 16.) Plaintiffs complied and pulled into a shopping center. (*Id.* at ¶ 17.)

Contra Costa Sheriff's Deputies Kyle Emley and William Odom then arrived on the scene; their vehicles "surrounded" Plaintiffs' car. (*Id.* at ¶ 18.) Deputy Gant directed the driver, Brian, to exit the vehicle, "place his hands behind his head, and walk backwards towards the sound of [Deputy] Gant's voice." (*Id.* at ¶ 23.) Brian noticed that Deputies Emley and Gant had their guns drawn and pointed at him. (*Id.*) Brian complied with all of Deputy Gant's instructions. (*Id.* at ¶¶

20-24.) Deputy Gant handcuffed Brian and placed him in the back of Deputy Gant's vehicle. (Dkt. No. 38 at ¶¶ 24-25.) Before doing so, Deputy Gant did not check Brian's identification or ask him any questions about the rental car. (*Id.* at ¶ 24.)

Deputies Emley and Gant then directed Jonathan to exit Plaintiffs' car "in a similar manner as Brian." (*Id.* at ¶ 26.) Brian noticed that the three deputies "all had their guns drawn and pointed at Jonathan." (*Id.*) "Jonathan complied with the officers' directions, walking backwards slowly and non-threateningly towards [Deputy] Emley." (*Id.* at ¶ 27.) Deputy Emley then screamed at Jonathan and pushed him to his knees. (*Id.* at ¶ 28.) Deputy Emley pointed his gun at the back of Jonathan's head and then injured Jonathan by slamming him "forward to the ground." (*Id.*) Deputy Emley handcuffed Jonathan and placed him in the back of Deputy Emley's vehicle. (*Id.* at ¶ 29.) While seated in the back of Deputy Gant's vehicle, Brian "noticed a Vigilant screen" on the vehicle's computer. (*Id.* at ¶ 31.)

None of the deputies made an "attempt to identify Brian or Jonathan, or to communicate any information about why they were [being detained]." (*Id.* at ¶ 30.) The deputies searched the rental car, opened the trunk, and Deputy Gant "unzipped the suitcases in the trunk and examined the contents of the luggage." (*Id.* at ¶ 32.) Plaintiffs did not consent to the warrantless searches. (*Id.* at ¶ 33.)

After searching the rental car and Plaintiffs' luggage, Deputy Gant asked for and obtained Brian's identification, and Deputy Emley did the same regarding Jonathan's identification. (*Id.* at ¶¶ 34-35.) Deputy Gant "presumably called dispatch" to check Brian's identification, and then Deputy Gant stated to Brian that "the ALPR registered the car's license plate as a 'hit' against a stolen vehicle 'hot list.'" (*Id.* at ¶¶ 34, 36.) "Brian explained that he had rented the car from Getaround, which presumably would not have rented him a stolen vehicle." (*Id.* at ¶ 37.) Deputy Gant asked Brian for the rental agreement, and Brian explained "that he booked the rental through an application on his smartphone, which was still in the [rental car]." (*Id.*) Deputy Gant retrieved Brian's phone and "demand[ed] the passcode." (*Id.* at ¶ 38.) Brian initially refused to provide the code and asked instead "to enter it himself." (*Id.*) Deputy Gant denied Brian's request and told Brian that he "had 'no choice'" but to give Deputy Gant the code. (*Id.*) Brian "reluctantly"

complied. (Dkt. No. 38 at ¶ 38.) "Neither [Deputy] Gant nor the other officers on the scene had a warrant to search Brian's phone." (*Id.* at ¶ 39.) Further, none of the Deputies intervened "to stop the other officers' excessive use of force or illegal searches." (*Id.* at ¶ 47.)

Brian directed Deputy Gant to the Getaround application, which "showed an active car rental." (*Id.* at ¶ 40.) Deputy Gant took Brian's unlocked phone and "talk[ed] to the other officers" before calling Getaround. (*Id.* at ¶¶ 40-41.) "Getaround confirmed to [Deputy] Gant that Brian had rented the car as he claimed." (*Id.* at ¶ 41.)

Deputies Gant and Emley then removed Brian and Jonathan from the deputies' respective vehicles and "took off [Plaintiffs'] handcuffs." (*Id.* at ¶ 42.) Deputy Gant did not allow Plaintiffs to leave the scene, however, because "he was waiting on his supervisor, Doe 1, to bring some paperwork." (*Id.* at ¶ 44.) Deputy Gant's supervisor asked Brian to sign a form "acknowledging that he had been detained for longer than 15 minutes." (*Id.* at ¶ 45.) The supervisor did not present a similar form to Jonathan. (*Id.*) Plaintiffs left the scene "and returned the vehicle to the Getaround lot in Oakland." (*Id.* at ¶ 48.) Thereafter, Plaintiffs "timely and properly filed government code claims against the County and San Jose pursuant to California Government Code § 910 *et seq*." (*Id.* at ¶ 49.)

**III. The Stolen Vehicle Report**

On October 20, 2018, prior to Brian Hofer's rental, the subject rental car was reported as stolen. (*Id.* at ¶ 54.) SJPD put the rental car "on a list of stolen vehicles, such that an alert was apparently sen[t] to police agencies and APLR vendors like Vigilant." (*Id.*) The rental car was subsequently recovered and SJPD "apparently received some information provided on behalf of Getaround[3] by text and telephone from someone requesting an incident report number that the car

[3] Plaintiffs allege that after the rental car was recovered "and placed back into [Getaround's] platform to be rented again, Getaround failed to notify [SJPD] of the recovery, or failed to notify the department in such a way that was likely to cause the department to accurately document that [the rental car] was not stolen." (Dkt. No. 38 at ¶ 57.) Plaintiffs also allege, "in the alternative" to the allegations against Getaround regarding its failure to adequately notify SJPD, that SJPD "reported that the car Brian rented was actually not stolen or had been recovered in a manner that notified Vigilant that the car should not be on its stolen vehicle list." (*Id.* at ¶ 62.) Such alternative allegations are permissible at this stage. *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 (9th Cir. 2007) ("[W]e allow pleadings in the alternative—even if the alternatives are mutually exclusive."). The amended complaint asserts that the "alternative" allegations are

was either not, in fact, stolen or had been returned." (Dkt. No. 38 at ¶ 55.) Despite being notified that the car was not stolen or had been recovered, SJPD "failed to remove the car from the list of stolen vehicles," or alternatively, "Vigilant failed to update its list of stolen vehicles," and the car "remained in Vigilant's database until at least November 25, 2018, when Brian and Jonathan were pulled over." (*Id.* at ¶¶ 56, 63.)

**IV. Procedural History**

Plaintiffs filed their original complaint on April 24, 2019, bringing six causes of action against the same Defendants noted above arising out of the November 2018 traffic stop. (*See generally* Dkt. No. 1.) Plaintiffs then filed an amended complaint on July 22, 2019, bringing the following seven claims: (1) 42 U.S.C. § 1983 for violation of the Fourth Amendment (against the County); (2) 42 U.S.C. § 1983 for violation of the Fourth Amendment (against Deputies Emley, Gant, and Odom, and Doe 1); (3) violation of California's Bane Act, California Civil Code § 52.1, (against Contra Costa Defendants and Doe 1); (4) assault and battery (against Contra Costa Defendants); (5) false imprisonment (against Contra Costa Defendants); (6) intentional infliction of emotional distress (against Contra Costa Defendants); and (7) negligence (against Contra Costa Defendants, San Jose, Vigilant, Getaround, and Does 2-50). (Dkt. No. 38.)

Getaround filed the instant motion to compel arbitration on July 10, 2019. (Dkt. No. 17.) The motion is fully briefed, (*see* Dkt. Nos. 42 & 51). On August 5, 2019, Contra Costa Defendants, San Jose, and Vigilant filed their respective motions to dismiss the amended complaint. (*See* Dkt. Nos. 43, 45, 46.) The motions are fully briefed, (*see* Dkt. Nos. 54-58, 60), and the Court heard oral argument on all motions on September 12, 2019.

**MOTION TO COMPEL ARBITRATION**

Getaround moves to compel arbitration of Plaintiffs' negligence claim pursuant to the mandatory arbitration provision contained in Getaround's Terms of Service (the "Agreement")

---

"consistent with ¶ 50" of the amended complaint, which alleges that "[c]ommunications and reporting among Defendants" regarding the rental car "are within the exclusive control of . . . Defendants," and "[a]lthough some . . . Defendants have provided [Plaintiffs] limited information," Plaintiffs cannot determine the "accuracy or completeness of that information at this time." (Dkt. No. 38 at ¶¶ 50, 62.)



United States District Court
Northern District of California

requiring "the use of arbitration on an individual basis to resolve disputes." (Dkt. No. 22-4, Ex. B at 12, 29-30.) The arbitration provision states, in its entirety:

> READ THIS SECTION CAREFULLY BECAUSE IT REQUIRES THE PARTIES TO ARBITRATE THEIR DISPUTES AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM COMPANY. For any dispute with Company, you agree to first contact us at [email] and attempt to resolve the dispute with us informally. In the unlikely event that Getaround has not been able to resolve a dispute it has with you after attempting to do so informally, ***we each agree to resolve any claim, dispute, or controversy (excluding any Getaround claims for injunctive or other equitable relief) arising out of or in connection with or relating to this Agreement, or the breach or alleged breach thereof (collectively, "Claims"), by binding arbitration by the American Arbitration Association ("AAA") in City and County of San Francisco, California under the commercial rules then in effect for the AAA, except as provided herein***. The award rendered by the arbitrator shall include costs of arbitration, reasonable attorneys' fees and reasonable costs for expert and other witnesses, and any judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction. Nothing in this Section shall be deemed as preventing Getaround from seeking injunctive or other equitable relief from the courts as necessary to protect any of Getaround's proprietary interests.

(*Id.* at 30 (emphasis added).) The Agreement further provides that "any arbitration conducted pursuant to the terms of [the Agreement] shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16)." (*Id.* at 29.)

## I. Legal Standard

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts must "enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). A party may petition a court to compel "arbitration [to] proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The United States Supreme Court recognizes a "liberal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) (noting that "as a matter of

federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Thus, courts must direct parties to proceed to arbitration should it determine: (1) that a valid arbitration agreement exists; and (2) that "the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (noting that "[i]f the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms"). However, the liberal federal policy favoring arbitration does not apply to the question of "whether a particular *party* is bound by the arbitration agreement." *Rajagopalan v. Noteworld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (internal quotation marks and citation omitted); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal quotation marks and citation omitted).

## II. Discussion

As the party seeking to compel arbitration, Getaround has the initial burden of demonstrating that a valid agreement exists to arbitrate the claims at issue. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (noting that the party seeking to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence") (internal quotation marks and citation omitted). The party opposing arbitration then "bears the burden of proving by a preponderance of the evidence any defense" to enforcing the agreement. *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 172-73 (2015). Getaround has met its burden, and Plaintiffs fail to show that the Agreement is otherwise unenforceable as to either Plaintiff.

### A. Existence of a Valid Agreement that Covers the Dispute at Issue

Courts must apply state contract law in determining whether a valid agreement to arbitrate exists. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009); *see also Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) ("To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of

contracts.”). Here, the Agreement is governed by California law. (*See* Dkt. No. 22-4, Ex. B at 29 (providing that the “Agreement shall be governed by the internal substantive laws of the State of California”).) Plaintiffs do not dispute that Brian Hofer accepted the Agreement, nor do they dispute the existence of the Agreement’s arbitration provision.[4] (*See* Dkt. No. 42 at 3 (“Brian had contracted to use Defendant Getaround’s car rental service, accepting the company’s Terms of Service . . . on July 12, 2018.”).) The arbitration provision’s coverage for “any claim . . . arising out of or in connection with or relating to this Agreement” includes Plaintiffs’ negligence claim against Getaround. (*See* Dkt. No. 38 at ¶ 92 (alleging that “Getaround breached its duty to update the San Jose police department that the car [Getaround] rented to Brian and Jonathan was not stolen or had been returned”).) Getaround has satisfied its burden of demonstrating the existence of a valid agreement to arbitrate the claim at issue, at least as to the signatory—Brian Hofer.

Plaintiffs oppose Getaround’s motion to compel arbitration on the grounds that: (1) Jonathan Hofer cannot be compelled to arbitrate because he is not a party to the Agreement; (2) California Civil Code § 1281.2(c) applies and gives the Court discretion to not enforce the arbitration provision because Plaintiffs’ negligence allegations against all defendants are interrelated creating a possibility of conflicting rulings on common issues of law or fact; and (3) the FAA does not preempt application of Section 1281.2(c) because the Agreement “is not ‘a contract evidencing a transaction involving commerce’ within the meaning of the FAA.” (Dkt. No. 42 at 3-6.)

The Court addresses each argument in turn.

**1. The Arbitration Provision Applies to Nonsignatory Jonathan Hofer**

As previously discussed, courts must look to “principles of state contract law” to determine

[4] Getaround submits the declaration of Garrett Kadillak, “Software Engineer of Renter Experience at Getaround,” who attests that Brian Hofer initially accepted the Agreement on March 19, 2017 when he created his Getaround user account, and was most recently prompted to accept the Agreement again on July 12, 2018. (Dkt. No. 22-4 at ¶¶ 4-5 (citing sealed exhibit at 22-3, Ex. A (“true and correct copy of Brian’s account information stored in [Getaround’s operations support system]”)).) Brian Hofer’s declaration in support of Plaintiffs’ opposition to Getaround’s motion to compel attests: “I do not recall accepting Getaround’s Terms of Service but at this time cannot dispute that I did so. If I did agree to Getaround’s Terms of Service, I certainly did not negotiate those terms with Getaround in any way.” (Dkt. No. 42-1 at ¶ 3.) Plaintiffs do not, however, raise any defense of unconscionability in opposition to the instant motion.

whether a party has agreed to arbitrate. *See Carlisle*, 556 U.S. at 630 (noting that "principles of state contract law regarding the scope of agreements (including the question of who is bound by them)" apply in cases governed by the FAA); *see also Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) ("State contract law controls whether parties agreed to arbitrate."). Here, it is undisputed that Jonathan Hofer is not party to the Agreement and generally "a nonsignatory is not bound by an arbitration clause." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1103-04 (9th Cir. 2006). Nonetheless, "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver[,] and estoppel." *Carlisle*, 556 U.S. at 631.

The doctrine of equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens the contract imposes." *Comer*, 436 F.3d at 1101 (internal quotation marks and citation omitted); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) (discussing the "doctrine of direct benefits estoppel" and noting that "Federal courts recognize that the obligation to arbitrate under the FAA does not attach only to one who has personally signed the arbitration"). As the California Court of Appeal has explained:

> The California cases binding nonsignatories to arbitrate their claims fall into two categories. In some cases, a nonsignatory was required to arbitrate a claim because a benefit was conferred on the nonsignatory as a result of the contract, making the nonsignatory a third party beneficiary of the arbitration agreement. In other cases, the nonsignatory was bound to arbitrate the dispute because a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim.

*Cty. of Contra Costa v. Kaiser Found. Health Plan, Inc.*, 47 Cal. App. 4th 237, 242 (1996).

Getaround asserts that the Agreement's arbitration provision applies to Jonathan Hofer under a theory of direct benefits estoppel because he was a passenger in the rental car and as such, "received direct and substantial benefits from [Brian Hofer's] rental . . . through the Getaround application" and Brian Hofer's required consent to the Agreement's terms. (Dkt. No. 51 at 9.) The parties cite no California case with similar facts (i.e., a nonsignatory passenger of a rental car

asserting the same claim as the signatory driver against the signatory rental car company), and the Court's research reveals none. That said, the Court agrees that the doctrine of direct benefits estoppel applies and compels Jonathan Hofer to arbitrate his negligence claim against Getaround.

The complaint suggests that Jonathan Hofer was an active participant in renting the car, and at the very least aware that his brother rented the car from Getaround. (*See* Dkt. No. 38 at ¶ 15 ("Brian rented a car from Getaround so that he and his brother Jonathan could travel north to visit family for the Thanksgiving holiday. *They* rented the car without incident.") (emphasis added).) Taking those allegations as true, Jonathan Hofer knowingly received a direct benefit as a result of the Agreement—the ability to travel as a passenger in a rental car to visit family for Thanksgiving. The benefit conferred on Jonathan is the exact benefit conferred on the signatory, Brian Hofer; indeed, the ability to travel in a rental car is the *only* benefit conferred by the Agreement. Thus, Jonathan Hofer as a nonsignatory knowingly received benefits flowing directly from the Agreement. *See NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 81-82 (2000) (holding that nonsignatory was equitably estopped from avoiding arbitration where she sought and derived a direct benefit from the agreement).

Further, Plaintiffs bring a negligence claim against Getaround based on the same facts and allege a breach of duty that Getaround owed to *both* Plaintiffs pursuant to the Agreement. (*See* Dkt. No. 38 at ¶ 60 (alleging that Getaround "breached its duty to *renters of its vehicles and their passengers* to update information it provides to police agencies regarding the status of its vehicles that were reported stolen") (emphasis added); *see also id.* at ¶ 92 ("Getaround breached its duty to update the San Jose police department that *the car it rented to Brian and Jonathan* was not stolen or had been returned.") (emphasis added).) There are no allegations that Getaround owed either Plaintiff a duty absent "the car it rented to Brian and Jonathan." By alleging negligence based on the same duty Getaround owed to Brian as the signatory to the Agreement, Jonathan Hofer as a nonsignatory seeks to rely upon the Agreement to prosecute his action against Getaround, "but disavow the applicability of the arbitration provision." *See NORCAL*, 84 Cal. App. 4th at 82. Such conduct is impermissible under the doctrine of equitable estoppel. *See id.* ("No person can be permitted to adopt that part of an entire transaction which is beneficial to him/her, and then



United States District Court
Northern District of California

reject its burdens.") (internal quotation marks and citation omitted).

In sum, because Jonathan Hofer knowingly received a direct benefit from the Agreement and seeks to exploit the benefits of the Agreement by alleging breach of a duty that arose from that Agreement, the doctrine of direct benefits estoppel applies. *See NORCAL*, 84 Cal. App. 4th at 81-82.[5]

The calculus might be different if Jonathan Hofer was a passive bystander injured as a result of Getaround's negligence and had no connection to Brian or Getaround and no knowledge of the contractual relationship between the two that gave rise to the direct benefit Jonathan received. *See Brown v. Comcast Corp.*, ED CV 16-00264-AB (SPx), 2016 WL 9109112, at * 7 (C.D. Cal. Aug. 12, 2016) (finding that nonsignatory "was a passive participant" to the agreement and could not be compelled to arbitrate because "[t]here is nothing in the record to suggest that [p]laintiff knew about or inquired into the agreement between [d]efendant and [signatory]" and thus plaintiff "could not have knowingly exploited the agreement when he was not even aware there was an agreement in the first place"). That is not the case here, however. The allegations instead support a finding that Jonathan Hofer was at least aware that his brother Brian rented the car so that *both* Plaintiffs could travel to visit family; thus, Jonathan Hofer was not an entirely passive participant to the Agreement and he knowingly received the only direct benefit flowing from the Agreement.

For similar reasons, Plaintiffs' reliance on *Comer* fails to persuade. The plaintiff in *Comer* participated in "ERISA plans operated by [defendant] Micor, Inc." 436 F.3d at 1099. The defendant trustees of the plans retained defendant Smith Barney "to provide investment advice" regarding the plans. *Id.* at 1099-1100. In doing so, the trustees and Smith Barney entered into "investment management agreements" that contained arbitration provisions requiring that "'all claims or controversies' between the trustees and Smith Barney 'concerning or arising from' any

---

[5] Although not addressed by the parties, the Court notes that the relationship between Jonathan Hofer and Brian Hofer further supports application of the doctrine of equitable estoppel in this case. *See Cty. of Contra Costa*, 47 Cal. App. 4th at 242 (noting the category of California cases in which a "nonsignatory was bound to arbitrate the dispute because a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement"); *see also NORCAL*, 84 Cal. App. 4th at 76 (same).

of the trustees' accounts managed by Smith Barney must be submitted to binding arbitration." *Id.* at 1100. The plaintiff sued Smith Barney under ERISA for breach of fiduciary duty, and the district court denied Smith Barney's petition to compel arbitration. *Id.*

On appeal, Smith Barney argued that the plaintiff was "bound by the arbitration clauses" in part and as relevant here "as a matter of equitable estoppel." *Id.* at 1101. The Ninth Circuit rejected that argument and affirmed the district court's ruling. In doing so, the court noted that the "insurmountable hurdle for Smith Barney" was the lack of evidence that the plaintiff "knowingly exploit[ed] the agreement[s] containing the arbitration clause[s] despite never having signed the agreement[s]." *Id.* at 1102 (internal quotation marks and citation omitted) (alterations in original). The court explained:

> Prior to his suit, Comer was simply a participant in trusts managed by others for his benefit. He did not seek to enforce the terms of the management agreements, nor otherwise to take advantage of them. Nor did he do so by bringing this lawsuit, which he bases entirely on ERISA, and not on the investment management agreements.

*Id.* Thus, the court concluded that "Smith Barney's attempt to shoehorn Comer's status as a passive participant in the plans into his knowing[ ] exploit[ation] of the investment management agreements fails." *Id.* (internal quotation marks omitted) (alterations in original).

Unlike the plaintiff in *Comer*, however, Jonathan Hofer was not merely a "passive participant" to the agreement at issue. (*See* Dkt. No. 38 at ¶ 15 ("Brian rented a car from Getaround so that he and his brother Jonathan could travel north to visit family for the Thanksgiving holiday. *They* rented the car without incident.") (emphasis added).) Taking those allegations as true, Jonathan Hofer had knowledge of the Agreement before receiving the benefit that flowed directly from that Agreement. There are no similar facts in *Comer*. *See* 278 F. Supp. 2d 1030, 1032 (N.D. Cal. 2003) (noting that plaintiff was a participant in the ERISA plans under which he sued from 1994 to 2003 and the trustees for those plans entered into the agreements with Smith Barney containing the arbitration provisions in 1999). Also unlike the plaintiff in *Comer*, Jonathan Hofer seeks to knowingly exploit the benefits of the Agreement by alleging that Getaround breached a duty that arose, at least in part, from the Agreement. (*See* Dkt. No. 38 at ¶ 92 (alleging negligence because "Getaround breached its duty to update the San Jose police



United States District Court
Northern District of California

department that *the car it rented to Brian and Jonathan* was not stolen or had been returned") (emphasis added).) Conversely, the plaintiff's suit in *Comer* was "base[d] entirely on [a fiduciary duty owed under] ERISA, and not on the investment management agreements" containing the arbitration provisions. *See* 436 F.3d at 1102.

Accordingly, the Court concludes that the Agreement's arbitration provision applies to Jonathan Hofer's negligence claim against Getaround.

**2. California Civil Code Section 1281.2(c) Does Not Apply**

California Civil Code Section 1281.2(c) provides that a court shall grant a petition to compel arbitration unless, among other things, it determines that:

> A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact.

Cal. Code Civ. Proc. § 1281.2(c).[6] "Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement," and "giv[es] the court discretion not to enforce the arbitration agreement under such circumstances." *Mount Diablo Med. Ctr. v. Health Net of California, Inc.*, 101 Cal. App. 4th 711, 726 (2002). Plaintiffs assert that if their negligence claim against Getaround is compelled to arbitration but the negligence claim against San Jose is not, there is a possibility of conflicting rulings from the arbitrator and the Court on a common issue of law or fact because the claim against San Jose involves allegations arising out of the same transaction or series of related transactions as the claim against Getaround,. Plaintiffs thus urge the Court to exercise its discretion under Section 1281.2(c) to *not* compel Plaintiffs to arbitrate their claims against Getaround.

[6] Section 1281.2(d) further provides that if Section 1281.2(c) applies: "the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." Cal. Code Civ. Proc. § 1281.2(d).

United States District Court
Northern District of California

The FAA does not permit a court to decline to enforce a valid arbitration provision, even if some claims arising from the same transaction or occurrence cannot be compelled to arbitration. 9 U.S.C. § 4. Under such circumstances the FAA "requires piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone*, 460 U.S. at 20 (emphasis removed). "Nevertheless, parties may agree that the FAA will not govern their arbitration even if the contract involves interstate commerce." *Mastick v. TD Ameritrade, Inc.*, 209 Cal. App. 4th 1258, 1263 (2012). "Parties may agree to state law rules for arbitration even if such rules are inconsistent with those set forth in the [FAA]." *Id.* (citing *Volt Info. Servs., Inc. v. Bd. of Trs. of Lelland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989) (noting that parties may "specify by contract the rules under which the arbitration will be conducted")). Parties must, however, "clearly evidence their intent to be bound by such rules." *Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 61-62 (1995)); *see also Cape Flattery Ltd. v. Titan Maritime*, 647 F.3d 914, 921 (9th Cir. 2011) (instructing that "courts should apply federal arbitrability law absent 'clear and unmistakable evidence' that the parties agreed to apply non-federal arbitrability law"). Thus, if Plaintiffs and Getaround agreed that California law controls the arbitration, then California Civil Code section 1281.2(c) applies and this Court has discretion to decline to compel Plaintiffs to arbitrate their claims against Getaround.

Plaintiffs insist that the Agreement's Governing Law provision supplies the unmistakable evidence that the parties intended for California law to supplant the FAA. The provision states:

> This Agreement shall be governed by the internal substantive laws of the State of California, without respect to its conflicts of laws principles. Notwithstanding the preceding sentences with respect to the substantive law, any arbitration conducted pursuant to the terms of [this Agreement] shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16).

(Dkt. No. 22-4, Ex. B at 29.) The Court disagrees that this provision evinces an intent to supplant the FAA. Both federal and state caselaw support application of the FAA over section 1281.2(c) because the choice of California substantive law without deference to California's conflicts of laws principles does not demonstrate the parties' intent to apply California rules governing arbitration instead of the FAA.

In *Wolsey Ltd. v. Foodmaker, Inc.*, the Ninth Circuit addressed application of Section 1281.2(c) in similar circumstances and expressly rejected the same argument set forth by Plaintiffs; specifically, that Section 1281.2(c) supplants the FAA based only on a "general choice-of-law clause" stating that the contract "shall be interpreted and construed under the laws of the State of California." *See Wolsey Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209-13 (9th Cir. 1998) (holding that "the district court erred in applying . . . § 1281.2(c) to deny [defendant's] motion to compel arbitration" pursuant to the FAA because "general choice-of-law clauses do not incorporate state rules that govern the allocation of authority between courts and arbitrators") (citing *Mastrobuono*, 514 U.S. at 63-64 (holding that a general choice-of-law provision does not override the default application of the FAA)); *see also Chiron*, 207 F.3d at 1131 (rejecting argument that general choice-of-law provision incorporated state law rules for arbitration) (citing *Wolsey and Mastrobuono*); *Sovak*, 280 F.3d at 1270 (noting that "a general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration," and interpreting such a clause "as simply supplying state substantive, decisional law, and not state law rules for arbitration").

District courts in this circuit have relied on *Wolsey* in concluding that a general choice-of-law provision does not incorporate California procedural rules governing arbitration and specifically, Section 1281.2(c). *See e.g., Diamond Foods, Inc. v. Hottrix,* LLC, No. 14-cv-03162-BLF, 2018 WL 3008562, at *6 (N.D. Cal. June 15, 2018) (finding *Wolsey* "directly on point with respect to the applicability of [Section] 1281.2(c)"); *Golden v. O'Melveny & Meyers LLP*, No. CV 14-8725 CAS, 2016 WL 4168853, at *13 (C.D. Cal. Aug. 3, 2016) (same); *Bitstamp Ltd. v. Ripple Labs Inc.*, No. 15-cv-01503-WHO, 2015 WL 4692418, at *3 (N.D. Cal. Aug. 6, 2015) ("A boilerplate choice-of-law clause does not overcome the presumption that federal arbitration law applies"); *BioMagic, Inc. v. Dutch Bros. Enters., LLC*, 729 F. Supp. 2d 1140, 1146 (C.D. Cal. 2010) (citing *Wolsey* and *Mastrobuono* and holding that "a general choice of law clause, without more, does not show that the parties intended to incorporate state procedural rules on arbitration"). Based on the plain terms of the Agreement and the federal caselaw on this issue, the Agreement's choice-of-law provision does not evince an intent to incorporate California rules governing

arbitration such that Section 1281.2(c) supplants application of the FAA.

Plaintiffs' citation to *Volt Info. Servs., Inc. v. Bd. of Trs. of Lelland Stanford Jr. Univ.*, 489 U.S. 468 (1989) does not counsel a different result. In *Volt*, the United States Supreme Court reviewed a California Court of Appeal decision in which the appellate court held that Section 1281.2(c) applied to stay arbitration based on a choice-of-law provision in the parties' agreement "specifying that their contract would be governed by 'the law of the place where the project is located,'" which was California. 489 U.S. at 471-72. The appellate court found that the choice-of-law provision evinced the parties' agreement to "incorporate[ ] the California rules of arbitration, including § 1281.2(c), into their arbitration agreement" and concluded that the FAA did not preempt application of Section 1281.2(c). *Id.* at 472.

The *Volt* Court affirmed the appellate court's ruling but in doing so did *not* rule on whether the contract's choice-of-law clause in fact incorporated California law governing arbitrations. *See id.* at 474 ("[T]he interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review."); *see also Mastrobuono*, 514 U.S. at 60 n.4 ("In *Volt* . . . we did not interpret the contract de novo. Instead, we deferred to the California court's construction of its own state law."). In other words, *Volt* did not address whether "the choice-of-law clause . . . mean[t] that the parties had incorporated the California rules of arbitration into their arbitration agreement." *See Volt,* 489 U.S. at 474; *see also Chiron*, 207 F.3d at 1131 ("In *Volt,* the Court declined to review the merits of the state court's determination that the parties' choice-of-law provision was intended to encompass both the state's substantive law as well as its rules of arbitration."). Because *Volt* did not address the issue presented here, it is of no help to Plaintiffs. This Court is instead "bound by *Mastrobuono,* not by *Volt*" in determining whether the Agreement's general choice-of-law provision incorporates state law rules of arbitration. *See Wolsey*, 144 F.3d at 1213. It does not.

The seminal California state court decision finding that Section 1281.2(c) applies and supplants the FAA also supports application of the FAA in this case. In *Mount Diablo Med. Ctr. v. Health Net of California, Inc.*, the defendant appealed the trial court's denial of its motion to compel arbitration, arguing that the agreement's general choice-of-law provision did not evince



United States District Court
Northern District of California

the parties' intent to arbitrate subject to the California Code of Civil Procedure. 101 Cal. App. 4th at 714. The California Court of Appeal affirmed the trial court's decision, and in doing so distinguished cases where an agreement's choice-of-law provision stated only that the agreement "shall be governed by [state] law" with those like *Mount Diablo* where the agreement contained an "explicit reference to enforcement [that] reasonably includes such matters as whether proceedings to enforce the agreement shall occur in court or before an arbitrator." *Id.* at 722-724 (distinguishing choice-of-law provisions stating only that the contract "shall be governed by the laws of the State of New York" or "shall be interpreted and construed under the laws of the State of California," with the provision in *Mount Diablo*, which stated that the "validity, construction, interpretation and enforcement of this [a]greement' shall be governed by California law," and finding that the agreement's "broad choice-of-law clause include[d] state law on the subject of arbitrability"). Based on the language of the choice-of-law provision, and because the provision's incorporation of Section 1281.2(c) would not "conflict[ ] with the objectives of the FAA," the court "conclude[d] that the parties intended to incorporate California procedural law governing the enforcement of their agreement to arbitrate" and as such, Section 1281.2(c) would apply and supplant the FAA. *Id.* at 714; *see also Cronus Invs., Inc. v. Concierge Servs.*, 35 Cal. 4th 376, 387 (2005) (citing *Mount Diablo* with approval and affirming stay of arbitration under Section 1281.2(c) where choice-of-law provision stated that the "agreement shall be construed and *enforced* in accordance with and governed by the laws of the state of California") (emphasis added).

Conversely here, the choice-of-law provision contains no such language regarding "enforcement" of the Agreement; it instead includes the type of general choice-of-law provision distinguished in *Mount Diablo*. Indeed, the provision clarifies that "[n]otwithstanding the preceding sentences with respect to the substantive law, any arbitration conducted pursuant to terms of these Terms shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16)." (*See* Dkt. No. 22-4, Ex. B at 29.); *see also Cronus*, 35 Cal. 4th at 394 ("Our opinion does not preclude parties to an arbitration agreement to *expressly* designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law.").

Plaintiffs' argument that any "ambiguity in the contract about the application of [Section] 1281.2(c) . . . should be construed against Getaround, the drafter," also fails. (*See* Dkt. No. 42 at 5.) Section 2 of the FAA requires that "questions of arbitrability . . . be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone*, 460 U.S. at 24. Thus, "[a]ny doubts or ambiguities as to the scope of the arbitration clause itself should be resolved in favor of arbitration." *Cronus*, 35 Cal. 4th at 386.

Accordingly, Section 1281.2(c) is not applicable because the Agreement's choice-of-law provision does not incorporate California rules governing arbitration; to the contrary, it expressly states that arbitration under the Agreement is governed by the FAA. And even if Section 1281.2(c) did apply, the Court would decline to exercise its discretion to not compel arbitration because the Court is not persuaded that the negligence claim against Getaround affects the claims against the other Defendants. *See Mount Diablo*, 101 Cal. App. 4th at 726 (noting that "Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement," and "giv[es] the court discretion not to enforce the arbitration agreement under such circumstances").

**3. The Agreement Involves Interstate Commerce**

By its terms, the FAA applies to arbitration provisions contained in "contract[s] evidencing a transaction involving commerce." 9 U.S.C. § 2. The United States Supreme Court has interpreted that language as requiring "that the transaction in fact involve interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce Terminix Co., Inc., v. Dobson*, 513 U.S. 265, 281 (1995) (internal quotation marks and alteration omitted). "Involv[ing] interstate commerce" is interpreted broadly, however, as "the functional equivalent of 'affecting'" interstate commerce. *See id.* at 273-76 (noting that "involving commerce" covers "more than only persons or activities *within the flow* of interstate commerce" and the FAA instead "reaches as far as the Commerce Clause itself") (internal quotation marks and citations omitted).

Plaintiffs assert that the "contract in this case does not involve interstate commerce



United States District Court
Northern District of California

because the contract itself specifies that Getaround's 'Service[7] shall be deemed solely based in California.'" (Dkt. No. 42 at 5 (quoting Dkt. No. 22-4, Ex. B at 29).) The Court disagrees for three reasons.

First, while the Agreement states that "the Service shall be deemed solely based in California," that statement appears in the "Governing Law" section and in context does not refer to the scope of commerce contemplated under the Agreement. As previously discussed, the provision states, in pertinent part:

> You agree that: (i) the Service shall be deemed solely based in California; and (ii) the Service shall be deemed a passive one that does not give rise to personal jurisdiction over Getaround, either specific or general, in jurisdictions other than California. This Agreement shall be governed by the internal substantive laws of the State of California, without respect to its conflict of laws principles. ***Notwithstanding the preceding sentences with respect to the substantive law, any arbitration conducted pursuant to terms of these Terms shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16).***

(Dkt. No. 22-4, Ex. B at 29 (emphasis added).) Thus, the Agreement by its express terms states that the FAA applies.

Second, the Agreement elsewhere states that "[t]he Service is controlled and operated from its facilities in the United States[,]" and "all materials found on the Service are solely directed to individuals, companies, or other entities located in the United States." (*Id.* at 28.) In support of its motion to compel, Getaround submits the declaration of Brian Pogrund, "Director of Markets for North America at Getaround." (Dkt. No. 51-1 at ¶ 1.) Mr. Pogrund attests that "Getaround has registered users in at least 10 states and the District of Columbia." (*Id.* at ¶ 4.) Further:

> A registered Getaround user can use the Getaround app to rent a car in any state or country where private car owners have registered to rent their cars. Currently, Getaround users can use the Getaround app to rent a car in the following United States cities and states, among many others: Atlanta, Boston, Chicago, Denver, Los Angeles, Miami, New Jersey, Philadelphia, Portland, San Diego, San Francisco, Seattle, and Washington, DC.

[7] The Agreement defines "Service" to include Getaround's "web site, web widgets, feeds, mobile device software applications . . . , applications for third-party web sites and services, and any other mobile or online services and/or applications owned, controlled, or offered by Getaround." (Dkt. No. 22-4, Ex. B at 12.)

(Dkt. No. 51-1 at ¶ 5; *see also* Dkt. No. 51-1, Ex. A at 6 (screenshot from Getaround's website stating that its rental service is "[a]vailable in over 300 cities around the world").) Mr. Pogrund also attests that "Getaround does not impose restrictions on where within the United States and Canada a user may travel in a car rented through the Getaround platform." (Dkt. No. 51-1 at ¶ 6; *see also* Dkt. No. 51-1, Ex. B at 9 (Getaround "Renter Policy" stating that a renter "may not drive a Car outside of the United States and Canada").) Thus, as a registered Getaround user, (*see* Dkt. No. 22-4 at ¶ 4), Brian Hofer could have rented a car outside of California or driven the one he rented in California across state lines. In other words, the scope of commerce contemplated under the Agreement is clearly not confined to California.

Third, Plaintiffs allege that Brian Hofer "booked the rental [car] through an application on his smartphone." (Dkt. No. 38 at ¶ 37.) Thus, the transaction contemplated under the Agreement affects interstate commerce because Getaround's customers must access the Internet—"an instrumentality and channel of interstate commerce"—to use Getaround's services. *See United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (recognizing that "as both the means to engage in commerce and the method by which transactions occur, the Internet is an instrumentality and channel of interstate commerce") (internal quotation marks and citation omitted). In sum, despite the Agreement's "Governing Law" provision that Getaround's services "shall be deemed solely based in California," the transaction at issue "in fact involve[d] interstate commerce, even if the parties did not contemplate an interstate commerce connection." *See Dobson*, 513 U.S. at 281.

Plaintiffs' citation to *Slaughter v. Stewart Enters., Inc.*, No. C 07-01157 MHP, 2007 WL 2255221 (N.D. Cal. Aug. 3, 2007) does not counsel a different result. (*See* Dkt. No. 42 at 5-6.) *Slaughter* involved a motion to compel arbitration in a wage-and-hour case. The court first examined the relevant economic activity covered under the employment contract at issue—crematory services—and concluded that it was purely "intrastate activity." 2007 WL 2255221, at *7 (finding "no evidence that there exists a large, interstate market for crematory services or that the economics of the industry suggest otherwise" and concluding "that the employment crematory sector is intrastate activity"). The court then applied an "incidental effects" analysis to address

whether the regulatory scheme set forth in the FAA would be "undercut unless the intrastate activity were regulated," and concluded that it would not. *Id.* ("Because the effects of applying the FAA to intrastate activity are not incidental, the court cannot conclude that a rational basis exists for regulating purely intrastate activities."). In sum, the court held that "the FAA does not apply to purely intrastate activities such as the crematory sector." *Id.*

Plaintiffs argue that "[t]here is no apparent reason the market for peer-to-peer rental services that expressly take place within California is any more interstate than that for crematory services." (Dkt. No. 42 at 6.) Not so. There are several "apparent reason[s]," all of which were previously discussed. Simply put, regardless of whether the Agreement states that "the Service shall be deemed solely based in California," that is not the reality of the service provided. (*See* Dkt. No. 51-1 at ¶¶ 4-8, Exs. A-B.) Getaround's rental service is not confined to California and "in fact involve[s] interstate commerce." *See Dobson*, 513 U.S. at 281. Thus, the FAA applies.

**III. Stay Litigation or Dismiss as to Getaround**

Given the Court's conclusion that Plaintiffs' negligence claim against Getaround is subject to arbitration, the only remaining question is whether the Court should dismiss Getaround from this action or stay the litigation as to Getaround pending arbitration.[8] Getaround asserts that dismissal with prejudice is warranted, and alternatively, requests a stay of proceedings pursuant to 9 U.S.C. § 3.

The FAA authorizes a court to grant a stay pending resolution of arbitration. *See* 9 U.S.C. § 3 ("[T]he court . . . upon being satisfied that the issue involved . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had."). Further, the FAA does not limit a court's authority to dismiss a case, especially when "all claims are barred by an arbitration clause." *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). Thus, courts have discretion under 9 U.S.C. § 3 to either stay or dismiss claims

[8] No party has requested a stay of litigation as to the nonarbitrating defendants, and the Court in its discretion concludes that such a stay is not warranted. *See Moses H. Cone*, 460 U.S. at 20 n.23 ("[I]t may be advisable to stay litigation among the nonarbitrating parties pending the outcome of arbitration. That decision is one left to the district court . . . as a matter of discretion to control its docket.").

that are subject to an arbitration agreement. *See id.* Because all parties remaining before this Court will likely seek discovery from Getaround, the Court exercises its discretion to stay Plaintiffs' claim against Getaround pending completion of arbitration. Notwithstanding the stay, all parties may still seek discovery from Getaround, provided such discovery is relevant to the active claims pending before this Court.

**IV. Administrative Motion to File Under Seal**

Pursuant to Civil Local Rule 79-5, Getaround moves to file under seal portions of an exhibit submitted in conjunction with the declaration of Garrett Kadillak in support of the instant motion to compel arbitration. (*See* Dkt. No. 22 (moving to file under seal Dkt. No. 22-3, Ex. A).) Getaround asserts that the identified portions warrant sealing because they include personal identifying information "of Plaintiff Brian Hofer contained in a Getaround account database." (Dkt. No. 22-1 at ¶ 3.) The Court has reviewed the exhibit and agrees that the cited portions contain personal identifying information of Plaintiff Brian Hofer, and thus warrant sealing. Accordingly, the Court grants Getaround's motion to seal. The identified portions of Dkt. No. 22-3, exhibit A shall be filed under seal; the remainder of the exhibit shall be filed on the public docket.

**MOTIONS TO DISMISS**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Thus, a complaint "that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient, as is a complaint that "tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks and citation omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

United States District Court
Northern District of California

### I. Contra Costa Defendants

As previously discussed, Plaintiffs bring the following seven claims against Contra Costa Defendants: (1) 42 U.S.C. § 1983 for violation of the Fourth Amendment (against the County); (2) 42 U.S.C. § 1983 for violation of the Fourth Amendment (against Deputies Emley, Gant, and Odom); (3) violation of California's Bane Act, California Civil Code § 52.1; (4) assault and battery; (5) false imprisonment; (6) intentional infliction of emotional distress; and (7) negligence. Contra Costa Defendants move to dismiss all claims on various grounds. The Court addresses each claim and respective argument in support of dismissal in turn.

#### A. Section 1983 claim against the County

##### 1. Section 1983 Claims and Civil Liability Generally

Section 1983 is not a source of substantive rights, but rather "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To state a claim under Section 1983, a complaint "must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). "A municipality may not be sued under [Section] 1983 solely because an injury was inflicted by its employees or agents." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)). Instead, a municipality is liable under Section 1983 only where the alleged unconstitutional conduct is the result of an official policy, pattern, or practice. *Monell*, 436 U.S. at 694. Thus, to state a claim for municipal liability under Section 1983, a plaintiff must allege: (1) that the plaintiff was deprived of a constitutional right; "(2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted). There can be no municipal liability without an underlying constitutional violation. *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).

A *Monell* claim can proceed under three theories of municipal liability: "(1) when official

policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct." *Brown v. Contra Costa Cty.*, No. C 12-1923 PJH, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) (citing *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010)). Whichever theory is alleged, the plaintiff must plead facts showing that "the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011); *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."). Further, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Tuttle*, 471 U.S. at 823-24. That said, "[p]olicy or custom may be inferred" by a policymaker's subsequent acceptance of unlawful conduct or failure to take corrective action. *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986).

**2. *Monell* Liability**

Plaintiffs allege that the individual Deputies violated Plaintiffs' Fourth Amendment rights on November 25, 2018 by arresting Plaintiffs without probable cause, conducting illegal searches of Brian Hofer's phone and Plaintiffs' luggage, and using excessive force on Plaintiffs. (Dkt. No. 38 at ¶¶ 74-76.) Plaintiffs further allege that the County is liable for those violations under Section 1983 because the Deputies' actions "were consistent with and pursuant to the policies, practices, and customs of Contra Costa." (*Id.* at ¶ 53.) The amended complaint also alleges municipal liability under a ratification theory; specifically, the Contra Costa County Sheriff, "as the final policymaker for Contra Costa with respect to the policies and practices of Deputy Sheriffs," made a public statement about the incident stating that the deputies involved "followed procedure and acted appropriately." (*Id.* at ¶ 51-52 (internal quotation marks omitted).) Plaintiffs' opposition asserts that "the Contra Costa County Sheriff's public approval of his deputies' conduct is sufficient to state a claim for *Monell* liability under the ratification doctrine." (Dkt. No. 56 at 5

(relying on *Larez v. Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)).)

Contra Costa Defendants argue that dismissal is warranted because Plaintiffs allege only an isolated constitutional violation and thus "fail to identify that the County had a practice or custom of subjecting drivers and passengers during traffic stops during traffic stops to substantial risk of harm and injury." (Dkt. No. 43 at 11.) As for Plaintiffs' ratification theory, Contra Costa Defendants assert that the statement attributed to the Contra Costa County Sheriff is insufficient to plead *Monell* liability in the absence of allegations that the Sheriff "allowed for the perpetuation of unconstitutional policies." (Dkt. No. 57 at 4.) The Court agrees on the first score but disagrees as to Plaintiffs' ratification theory.

The amended complaint contains no factual allegations identifying a specific County policy or custom that served as "the moving force behind the constitutional violation." *See Dougherty*, 654 F.3d at 900-01. The amended complaint instead contains only the conclusory allegation that the Deputies' conduct was "consistent with and pursuant to [the County's] policies, practices, and customs." (*See* Dkt. No. 38 at ¶ 53.) Such a conclusory allegation is insufficient to survive a Rule 12(b)(6) motion to dismiss. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (alteration in original) (internal quotation marks and citation omitted).

Plaintiffs have, however, sufficiently pleaded a ratification theory at this stage. Plaintiffs allege that the Contra Costa County Sheriff is the final policymaker for the County "with respect to the policies and practices of Deputy Sheriffs." (Dkt. No. 38 at ¶ 51.) Accepting that allegation as true, the Sheriff's decisions regarding policies and practices governing deputy conduct could give rise to municipal liability. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 140 (1988) (noting that a sheriff "could be the final policymaker" regarding "law enforcement practices" such that "his or her decisions in such matters *could* give rise to municipal liability"). Plaintiffs further allege that the Sheriff "made a public statement about the incident" stating that the Deputies "followed procedure and acted appropriately." (*See* Dkt. No. 38 at ¶ 52). The Sheriff's statement may demonstrate an official policy or custom for purposes of *Monell* liability if it represents "a

first-time decision to adopt a particular course of action . . . directed by a governmentally authorized decisionmaker." *See Larez*, 946 F.2d at 646 (noting that official or municipal liability "must be attributable to official policy or custom" and such policy or custom may be shown by "[e]vidence that there was a custom or policy to use excessive force" or by evidence that "an authorized policymaker on police matters[ ] . . . made, or ratified a decision that deprived plaintiffs of their constitutional rights"). In other words, an official custom or policy can be shown by demonstrating a policymaker's subsequent approval of the government actor's unlawful conduct. Plaintiffs' allegations at this stage are sufficient to show a policy or custom under a ratification theory.

Contra Costa Defendants argue that Plaintiffs' reliance on *Larez* is misplaced because there the plaintiffs also alleged that the Chief of Police and City of Los Angeles "allowed the perpetuation o[f] unconstitutional policies and customs of excessive force, illegal searches including official tolerance for the destruction of property during searches, and inadequate complaint procedures that had the effect of encouraging the excessive use of force." (*See* Dkt. No. 57 at 4 (citing *Larez*, 946 F.2d at 635).). Contra Costa Defendants assert that here, by contrast, the amended complaint contains no such allegations regarding "perpetuation of unconstitutional policies, nor does the statement attributed to [the] Sheriff ratify such conduct." (*Id.*) The Court disagrees. The allegations discussed in *Larez* primarily concern the first means of demonstrating municipal liability—evidence of a preexisting custom or policy that led to the alleged constitutional violation—and not first-time ratification of allegedly unconstitutional conduct. The *Larez* court noted, however, that municipal liability under Section 1983 can be shown both ways. *See* 946 F.2d at 646; *see also McRorie*, 795 F.2d at 784 ("Policy or custom may be inferred if, after [the unlawful conduct], the [relevant] officials took no steps to reprimand or discharge the [government actors], or if they otherwise failed to admit the [government actors'] conduct was in error."). Here, the amended complaint sufficiently alleges that the Sheriff ratified the Deputies' actions by issuing a public statement that the Deputies "followed procedure and acted appropriately." (*See* Dkt. No. 38 at ¶ 52.) That allegation is sufficient at the pleading stage to show a policy or custom for purposes of *Monell* liability.

Accordingly, the Court DENIES Contra Costa Defendants' motion to dismiss the Section 1983 claim against the County based on a ratification theory. The motion is GRANTED to the extent Plaintiffs are proceeding on a specific County policy or custom.

**B. Section 1983 claim against Deputies Emley, Gant, and Odom**

To adequately plead a Section 1983 claim against individual defendants, a complaint must identify what constitutional or other federal right each defendant violated, providing sufficient facts to plausibly support each purported violation. *See Drawsand v. F.F. Props., L.L.P.*, 866 F. Supp. 2d 1110, 1120 (N.D. Cal. 2011) ("Where multiple defendants are involved, the pleadings must establish a nexus between each defendant's actions and the alleged deprivation of plaintiff's constitutional rights."). As previously discussed, Plaintiffs allege that the Deputies violated Plaintiffs' Fourth Amendment rights by: (1) stopping, detaining, and arresting Plaintiffs "without a warrant and without probable cause"; (2) conducting a warrantless search of Plaintiffs' "trunk and suitcases and coerc[ing] Brian to provide the password to his phone"; and (3) using excessive force against Plaintiffs. (*See* Dkt. No. 38 at ¶¶ 74-76.) Contra Costa Defendants move to dismiss the Section 1983 claims against the individual Deputies because Plaintiffs fail to plead a Fourth Amendment violation. Further, Contra Costa Defendants argue that even if the Deputies violated Plaintiffs' Fourth Amendment rights, the Deputies are entitled to qualified immunity.

Contra Costa Defendants motion to dismiss the Section 1983 claims against the Deputies is DENIED for the reasons discussed at oral argument. Plaintiffs' material allegations are indistinguishable from *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1053 (9th Cir. 2014), a case in which the Ninth Circuit reversed the district court's grant of summary judgment in favor of the defendants on the plaintiff's Section 1983 claims because "factual determinations remain that must be left to a jury." Similar allegations are present here. Tellingly, Contra Costa Defendants' reply in support of their motion to dismiss does not address *Green*, despite Plaintiffs' discussion of the case in their opposition.[9]

---

[9] Contra Costa Defendants' motion to dismiss cites *Green* for the proposition that "[a]n unconfirmed hit on the ALPR does not, alone, form the reasonable suspicion necessary to support an investigatory detention." (*See* Dkt. No. 43 at 12, 19 (citing *Green*, 751 F.3d at 1045).) The motion does not otherwise discuss *Green*.



United States District Court
Northern District of California

United States District Court
Northern District of California

**C. Violation of California Civil Code Section 52.1**

The Bane Act, California Civil Code Section 52.1, provides a right to relief against anyone who "interferes by threats, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1. Thus, to state a claim under Section 52.1, a plaintiff must show "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998).

Plaintiffs allege that Contra Costa Defendants violated Section 52.1 based on federal and state constitutional violations related to the Deputies' use of excessive force, their search of Brian Hofer's phone and Plaintiffs' luggage, and their unlawful detention of Plaintiffs. Contra Costa Defendants argue that dismissal is warranted because Plaintiffs' Bane Act claim "fails for the same reasons . . . that their federal [Section] 1983 false arrest and excessive force claims fail." (Dkt. No. 43 at 20-21.) Because the Court concludes that Plaintiffs' Section 1983 claims survive dismissal, their Bane Act claim survives as well. *See Green*, 751 F.3d at 1053 (reversing grant of summary judgment in the defendant's favor on Bane Act claim where the plaintiff "raised triable issues of fact concerning the lawfulness of her detention" under the Fourth Amendment).

**D. State Law Tort Claims**

Next, Contra Costa Defendants move to dismiss Plaintiffs' state law tort claims for assault and battery, false imprisonment, intentional infliction of emotional distress, and negligence because the Deputies' actions were privileged under state law; specifically, California Penal Code §§ 835a, 836.5(b). Contra Costa Defendants further move to dismiss Plaintiffs' negligence claim because Plaintiffs cannot establish breach of any duty Contra Costa Defendants owed to Plaintiffs. The Court notes that *Green* supports denial of Contra Costa Defendants' motion to dismiss Plaintiffs' tort claims on this record. *See* 751 F.3d at 1053 (reversing and remanding grant of summary judgment on state law claims because "it remains a question whether the conduct at issue was lawful"). However, because Contra Costa Defendants' arguments regarding the tort claims were not discussed at oral argument, the Court addresses them here, in turn.

United States District Court
Northern District of California

**1. California Penal Code § 835a**

Pursuant to California Penal Code § 835a, a police officer "who has reasonable cause to believe that the person to be arrested has committed a public offense may use *reasonable force* to effect the arrest, to prevent escape or to overcome resistance." Cal. Penal Code § 835a (emphasis added). The privilege applies to "any tort liability" arising out of such use of force. *See Gilmore v. Superior Ct.*, 230 Cal. App. 416, 421 (1991) (addressing privilege under Penal Code § 197 and noting that "[a] privileged act is by definition one for which the actor is absolved of any tort liability, whether premised on the theory of negligence or intent"). Where a plaintiff shows that an officer used *unreasonable* force, however, the privilege under Section 835a does not apply. *See Robinson v. Solano Cty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) ("California denies immunity to police officers who use excessive force in arresting a suspect."); *see also Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905, 925 (N.D. Cal. 2014) ("In an assault and battery claim against a police officer under [California] state law, a plaintiff must show that the officer used unreasonable force."). Indeed, Contra Costa Defendants recognize that Section 835a applies "unless [the Deputies] used unreasonable force." (*See* Dkt. No. 43 at 21.)

For purposes of tort liability, California courts apply the same standard for determining the "reasonableness" of police conduct as applied by federal courts. *See Hernandez v. City of Pomona*, 46 Cal. 4th 501, 514 (2009) (noting that federal and state courts apply the same "totality of the circumstances" test for determining whether force is reasonable). Thus, if conduct is unreasonable under federal law, it is unreasonable under state law. Here, Plaintiffs have plausibly alleged a Section 1983 claim for excessive force and unlawful arrest. Because *all* Plaintiffs' tort claims arise from the same conduct and are premised in part on the Deputies' use of excessive force, the Court cannot say that Penal Code § 835a applies as a matter of law. *See Davis v. City of San Jose*, 69 F. Supp. 3d 1001, 1009 (N.D. Cal. 2014) (noting that the plaintiff's state law tort claims premised on excessive force "rise[ ] and fall[ ] with his Fourth Amendment claims").

**2. California Penal Code § 836.5(b)**

California Penal Code § 836.5(b) provides:

> There shall be no civil liability on the part of, and no cause of action

shall arise against, any public officer or employee acting pursuant to subdivision (a)[10] and within the scope of his or her authority for false arrest or false imprisonment arising out of any arrest that is lawful or that the public officer or employee, at the time of the arrest, had reasonable cause to believe was lawful. No officer or employee shall be deemed an aggressor or lose his or her right to self-defense by the use of reasonable force to effect the arrest, prevent escape, or overcome resistance.

Cal. Penal Code § 836.5(b). Contra Costa Defendants' motion cites this provision, arguing that the Deputies "were privileged under California Penal Code Sections 835a, 836.5(b) unless they used unreasonable force, or acted without reasonable suspicion to make a high-risk traffic stop." (Dkt. No. 43 at 21.) They provide no substantive argument regarding this statute, and it appears inapplicable on its face. The facts alleged do not establish "an[ ] arrest that is lawful or that the public officer or employee, at the time of the arrest, had reasonable cause to believe was lawful." *See* Cal. Penal Code § 836.5(b). Nor is Contra Costa Defendants' citation to this statute consistent with the arguments set forth in their motion, (*see* Dkt. No. 43 at 11-17 ("reasonable suspicion that a suspect is driving a stolen car does not convert the investigatory detention into an arrest requiring probable cause")), or their reply, (*see* Dkt. No. 57 at 4 ("Plaintiffs were not arrested")). Simply put, this statute is not applicable on the record before the Court.

**3. Negligence**

Under California law, the elements of a negligence claim are: (1) "the existence of duty (the obligation to other persons to conform to a standard of care to avoid unreasonable risk of harm to them)"; (2) "breach of duty (conduct below the standard of care)"; (3) "causation (between the defendant's act or omission and the plaintiff's injuries)"; and (4) damages. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001). Contra Costa Defendants argue that Plaintiffs cannot establish breach of duty. That argument fails, however, because "[u]nder California law, police officers have a duty not to use excessive force." *See Warren v. Marcus,* 78 F. Supp. 3d 1228, 1251 (N.D. Cal. 2015). Because Plaintiffs have plausibly alleged a Section 1983 excessive force

[10] Subdivision "a" provides: "A public officer or employee, when authorized by ordinance, may arrest a person without a warrant whenever the officer or employee has reasonable cause to believe that the person to be arrested has committed a misdemeanor in the presence of the officer or employee that is a violation of a statute or ordinance that the officer or employee has the duty to enforce." Cal Penal Code § 836.5(a).



United States District Court
Northern District of California

claim, their negligence claim premised on the same conduct survives.

**4. Direct Liability Against the County**

The Court notes, however, that Plaintiffs fail to plead a statutory basis for direct liability against the County. California Government Code provides that "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person" except as "provided by statute." Cal. Gov. Code § 815(a). Here, Plaintiffs fail to plead a particular statute that would abrogate the County's statutory immunity from common-law torts. Thus, to the extent Plaintiffs' tort claims against the County are premised on a theory of direct liability, the Court grants Contra Costa Defendants' motion to dismiss.

That said, California Government Code Section 815.2 provides for vicarious liability, stating in pertinent part:

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Cal. Gov. Code § 815.2(a). It is settled that "a governmental entity can be held vicariously liable when a police officer acting in the course and scope of employment uses excessive force or engages in assaultive conduct." *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 215-16 (1991) (collecting cases). Thus, because Plaintiffs' tort claims against the individual Deputies survive, the claims against the County survive as well.

***

Accordingly, the Court GRANTS Contra Costa Defendants' motion to dismiss in part. The state law tort claims against the County are dismissed to the extent they are premised on a theory of *direct* and not vicarious liability. The Court DENIES the motion in all other respects.

**II. San Jose**

Plaintiffs bring a single claim against San Jose for negligence, alleging that the City "breached its duty to maintain accurate records of stolen vehicles, which records are transmitted to police agencies throughout California and the rest of the United States." (Dkt. No. 38 at ¶ 91.) San Jose moves to dismiss the claim on three independent grounds: (1) the claim "is precluded by

the California Government Claims Act because there is no statutory basis for their claim"; (2) Plaintiffs fail to state a plausible claim for relief "because the City has no duty under the facts alleged"; and (3) San Jose is entitled to immunity. (Dkt. No. 45 at 4.) The first two grounds are intertwined, and the Court agrees that Plaintiffs' amended complaint fails to identify the statutory basis for its negligence claim against the City and dismissal is warranted on those grounds. San Jose is not entitled to immunity, however.

**A. Direct Liability**

As previously discussed, the California Government Code provides that "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person" except as "provided by statute." Cal. Gov. Code § 815(a); *see also Hoff v. Vacaville Unified Sch. Dist.*, 19 Cal. 4th 925, 932 (1998) ("All government tort liability must be based on statute."). Thus, "[a]s a condition to recovery against a local government entity based on direct liability, an injured party must identify a specific statute declaring the entity to be liable or creating a duty of care by the entity toward the injured party." *Castro v. City of Union City*, No. 14-cv-00272-MEJ, 2014 WL 4063006, at *11 (N.D. Cal. Aug. 14, 2014) (citing *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1183 (2003)); *see also* Cal. Gov. Code § 815.6 (providing that a public entity is directly liable for breach of a mandatory duty imposed by statute).

Plaintiffs' amended complaint is devoid of *any* reference to a statutory basis for its negligence claim against San Jose. Plaintiffs allege that San Jose "breached its duty to maintain accurate records of stolen vehicles," without identifying a statutory basis for such duty. (*See* Dkt. No. 38 at ¶ 91.) And although Plaintiffs' opposition to San Jose's motion to dismiss asserts that "the City has a mandatory statutory duty to report stolen vehicles that are recovered to the appropriate [California] Department of Justice automated property system" pursuant to California Penal Code § 11108,[11] (*see* Dkt. No. 54 at 3), that argument does not cure Plaintiffs' failure to

---

[11] California Penal Code § 11108 provides: "Each sheriff or police chief executive shall submit descriptions of serialized property, or nonserialized property that has been uniquely inscribed, which has been reported stolen, lost, found, recovered, held for safekeeping, or under observation, directly into the appropriate Department of Justice automated property system for stolen bicycles,

allege a statutory basis for direct liability against the City in the amended complaint itself. Further, Penal Code § 11108 applies to "[e]ach sheriff or police chief executive," *see* Cal. Penal Code § 11108, and on its face does not impose a mandatory duty on the City, *see Guzman v. Cty. of Monterey*, 46 Cal. 4th 887, 902 (2009) ("There is no mandatory duty imposed on a public entity if the specified enactment is inapplicable to that entity."); *see also Hoff*, 19 Cal. 4th at 939 (finding no direct liability under Government Code § 815.6 where statute in question "requires only teachers to hold pupils to a strict account for their conduct; it does not purport to impose a mandatory duty more broadly on any public entity") (internal quotation marks and alteration omitted).

Accordingly, to the extent Plaintiffs' negligence claim against San Jose is premised on a theory of direct liability for breach of a mandatory duty, the Court GRANTS the City's motion to dismiss with leave to amend.

**B. Vicarious Liability**

The amended complaint is likewise silent as to any statutory basis for vicarious liability against the City for actions by SJPD. Plaintiffs' opposition argues that Penal Code § 11108 imposes a "mandatory duty . . . on the City's Chief of Police, and the Government Code makes the City liable for the Chief's breach of that duty" pursuant to Government Code § 815.2. (Dkt. No. 54 at 3.) As previously discussed, Section 815.2 provides, in pertinent part:

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Cal. Gov. Code § 815.2(a). Thus, Section 815.2(a) "makes a public entity vicariously liable for its employee's negligent acts or omissions within the scope of employment." *Eastburn*, 31 Cal. 4th at 1180. Such liability only attaches, however, "if and when it is adjudged that the employee was negligent," and although "public entities always act through individuals, that does not convert a claim for direct negligence into one based on vicarious liability." *Munoz*, 120 Cal. App. 4th 1077,

stolen vehicles, or other property, as the case may be."

1113 (2004), *disapproved of on other grounds by Hayes v. Cty. of San Diego*, 57 Cal. 4th 622 (2013). In other words, the doctrine of vicarious liability "clearly contemplates that the negligent employee whose conduct is sought to be attributed to the employer at least be specifically identified, if not joined as a defendant." *Munoz*, 120 Cal. App. 4th at 1113.

Here, the amended complaint identifies SJPD; however, to the extent Plaintiffs' opposition asserts that it is proceeding on a theory that Penal Code § 11108 imposes a "mandatory duty . . . on the City's Chief of Police" and the City is vicariously liable for breach of that duty under Section 815.2(a), Plaintiffs must plead that theory and support it with factual allegations. Plaintiffs have not done so.

Plaintiffs' opposition also asserts that the City owed a duty to Plaintiffs under Section 815.2 because a private individual would owe Plaintiffs a duty under the same circumstances and thus be liable for negligence. (Dkt. No. 54 at 4.) Plaintiffs cite no direct authority for that proposition and instead cite *Lawson v. Safeway Inc.*, 191 Cal. App. 4th 400, 409 (2010) for the general proposition that the "chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk." (*See* Dkt. No. 54 at 4.) Plaintiffs argue that by extension the City owed a duty under Section 815.2 because "[t]he risk that the failure of the City's Chief of Police to report that the car Brian rented was recovered would result in . . . him being wrongfully stopped by police is entirely foreseeable, if not inevitable." (*Id.*)

Plaintiffs' argument is contrary to the "public duty" rule recognized by California courts. The rule rejects imposition on law enforcement officials of "a privately enforceable duty to use reasonable diligence in the performance of public functions" because such a duty "would effectively bring the business of government to a speedy halt." *See Adams v. City of Fremont*, 80 68 Cal. App. 4th 243, 275 (1998) (internal quotation marks and citation omitted). Indeed, California courts have found no duty of care and denied liability "for injuries caused by the failure of police personnel to respond to requests for assistance, the failure to investigate properly, or the failure to investigate at all" because the "police had not induced reliance on a promise, express or implied, that they would provide protection," such that there was a "special relationship" between the plaintiff and police. *Williams v. State of California*, 34 Cal. 3d 18, 25 (1983) (collecting



United States District Court
Northern District of California

cases).

Thus, Plaintiffs' assertion that the City's Chief of Police—and by extension under Section 815.2, the City—would have the same general negligence liability of a private individual under the same circumstances is contrary to California tort law. Nor are there any allegations of a "special relationship" that would override the public duty rule. *See id.* at 28 (affirming dismissal of negligence claim against police where complaint contained "no allegation of the requisite factors to a finding of special relationship, namely detrimental reliance by the plaintiff on the officers' conduct, statements made by them which induced a false sense of security and thereby worsened [the plaintiff's] position"). Indeed, Plaintiffs' opposition acknowledges that "Plaintiffs do not allege that the City's duty to report that the car it had reported stolen was recovered was based upon a special relationship." (Dkt. No. 54 at 4.)

In sum, dismissal is warranted because Plaintiffs fail to plead a statutory basis for their negligence claim against the City. The remaining question is whether the City is immune from negligence liability in this action altogether. It is not.

**C. Immunity**

San Jose argues that it is entitled to immunity from liability for the conduct alleged. (Dkt. No. 45 at 4.) As previously discussed, Plaintiffs allege that an unidentified individual filed a police report in October 2018 reporting the subject rental car as stolen. (Dkt. No. 38 at ¶ 54.) SJPD then "placed the vehicle on a list of stolen vehicles, such that an alert was apparently sent to police agencies and ALPR vendors like Vigilant." (*Id.*) The vehicle was subsequently recovered and SJPD "apparently received some information provided on behalf of Getaround by text and telephone from someone requesting an incident report number that the car was either not, in fact, stolen or had been returned." (*Id.* at ¶ 55.) Plaintiffs allege that despite this information, SJPD "failed to remove the car from the list of stolen vehicles" and "the car Brian rented remained in Vigilant's database until at least November 25, 2018, when [Plaintiffs] were pulled over." (*Id.* at ¶ 56.)

San Jose argues that it is entitled to immunity on four grounds: (1) the absolute privilege for police reports under California Civil Code § 47; (2) Government Code §§ 815.2(b), 821.6; (3)

Government Code § 818.8; and (4) Government Code § 818. (Dkt. No. 45 at 8-9.) The Court addresses each argument in turn.[12]

**1. Civil Code § 47**

San Jose asserts that the City is protected from liability for SJPD's alleged negligence because Plaintiffs' claim is predicated on an alleged communication between a private party and SJPD that is subject to an absolute privilege under Civil Code § 47. As explained by the California Supreme Court:

> Section 47 establishes a privilege that bars liability in tort for the making of certain statements. Pursuant to section 47(b), the privilege bars a civil action for damages for communications made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [statutes governing writs of mandate], with certain statutory exceptions.

*Hagberg v. California Fed. Bank*, 32 Cal. 4th 350, 360 (2004) (alterations in original).

State and federal courts have interpreted Civil Code § 47 as providing an absolute privilege to reports made to police, such that those reports "cannot be the basis for tort liability." *See, e.g., Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1258 (9th Cir. 2008) (finding that call to San Francisco police was "privileged under state law and thus [could not] be the basis for tort liability" against private party defendants) (citing *Hagberg*, 32 Cal. 4th at 362-370 (finding persuasive "the overwhelming majority of cases [that] conclude that when a citizen contacts law enforcement personnel to respond, the communication . . . enjoys an unqualified privilege under section 47(b)" and concluding that such communications are privileged based on the "expansive reach" of the statute)); *Herwick v. Budget Rent A Car System, Inc.*, No. CV 10-00409 SJO, 2010 WL 11549389, at *3 (C.D. Cal. 2010) (noting that "reports to police are absolutely privileged under [Civil Code] § 47, and may not serve as predicates for tort claims, except for the tort of malicious prosecution"

[12] San Jose's reply brief raises two additional grounds for immunity: Government Code §§ 820.2, 820.8. (*See* Dkt. No. 58 at 10.) The Court declines to consider the City's arguments regarding immunity on those grounds because they were not raised in the City's motion. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (noting that courts "need not consider arguments raised for the first time in a reply brief").



United States District Court
Northern District of California

and finding rental car company's erroneous report of stolen vehicle to police privileged) (citing *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1090 (C.D. Cal. 2009) (noting that "under California law, reports to police of suspected criminal activities—even false reports made with malice—are absolutely privileged and may not serve as predicate for tort claims, except the tort of malicious prosecution.")). The California Supreme Court has recognized the public policy served by Civil Code § 47:

> An absolute privilege exists to protect citizens from the threat of litigation for communications to government agencies whose function it is to investigate and remedy wrongdoing. The privilege is based on the importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity.

*Hagberg*, 32 Cal. 4th at 362 (internal quotation marks, citations, and alterations omitted). If a report of suspected illegal activity is privileged under California law, then it follows that a subsequent report to police concerning the same activity is also privileged and cannot give rise to tort liability against the private party that made the report.

San Jose asserts that because private parties are protected from tort liability for reports made to police, the City cannot "be held liable for such a report" pursuant to Government Code § 815(b). (Dkt. No. 45 at 9.) The Court disagrees. Section 815(b) provides:

> The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and *is subject to any defenses that would be available to the public entity if it were a private person*.

Cal. Gov. Code § 815(b) (emphasis added). Thus, the City's negligence liability is subject to the same defenses under California law available to private parties. Under Civil Code § 47, the alleged report to SJPD "provided on behalf of Getaround" cannot form the basis for negligence liability against the individual who made that report. However, Plaintiffs are not suing the City based on the alleged report that the rental car was not stolen or had been recovered; Plaintiffs allege instead that SJPD was negligent in failing to act on that information. In other words, the report itself is not "the basis for tort liability" in this action. *See Ibrahim*, 538 F.3d at 1258. Thus, the City cannot assert the same defense pursuant to Government Code § 815(b) "that would be available to the public entity if it were a private person" under Civil Code § 47.

**2. Government Code §§ 815.2(b), 821.6**

San Jose next asserts immunity under Government Code §§ 815.2(b), 821.6. Section 815.2(b) provides: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Cal. Gov. Code § 815.2(b). Section 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov. Code. § 821.6. San Jose argues that any actions taken by SJPD in the course of its investigation into the stolen vehicle are covered under Section 821.6. (Dkt. No. 45 at 9 (citing *Amylou R. v. Cty. of Riverside*, 28 Cal. App. 4th 319, 321 (1994)).)

The California Supreme Court has concluded that immunity under Section 821.6 is limited to malicious prosecution claims. *See Sullivan v. Cty. of Los Angeles*, 12 Cal. 3d 710, 721 (1974) (interpreting Section 821.6 narrowly as "confining its reach to malicious prosecution actions"). And although California Courts of Appeal have interpreted Section 821.6's reach more expansively, *see Amylou R.*, 28 Cal. App. 4th at 321, the Ninth Circuit has recently concluded that "the California Supreme Court would adhere to *Sullivan* even though California Courts of Appeal have strayed from it," *Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016) (following *Sullivan* and "hold[ing] that the district court erred in dismissing the state law claims against County [d]efendants [pursuant to Section 821.6] because the claims against them are *not* malicious prosecution claims") (emphasis added). At oral argument, San Jose asserted the opposite—that Section 821.6 immunizes a public employee from all tort liability *except* malicious prosecution claims. San Jose has it backwards. This Court is bound by *Garmon* and concludes that the City is not immune from liability for Plaintiffs' negligence claim under Government Code §§ 815.2(b), 821.6.

**3. Government Code § 818.8**

Government Code § 818.8 provides that "[a] public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." Section 818.8 provides "public entities immunity for negligent

misrepresentation but not for negligence." *Jopson v. Feather River Air Quality Mgmt. Dist.*, 108 Cal. App. 4th 492, 495 (2003). As explained by the California Supreme Court, "'misrepresentation,' as a tort distinct from the general milieu of negligent and intentional wrongs, applies to interferences with financial or commercial interest. The Legislature designed section 818.8 to exempt the governmental entity from that type of liability." *Johnson v. State of California*, 69 Cal. 2d 782, 800 (1968).

San Jose argues that it is immune from liability under Section 818.8 because "[t]he essence of Plaintiffs' negligence claim against the City is that the City communicated incorrect information to other police agencies that the vehicle was stolen and unrecovered." (Dkt. No. 45 at 9.) Plaintiffs' opposition asserts that the City mischaracterizes Plaintiffs' claim, and "[i]n fact, Plaintiffs' never allege that the City communicated incorrect information to anyone." (Dkt. No. 54 at 5.) The Court agrees that Section 818.8 is inapplicable on the facts alleged and drawing all reasonable inferences in Plaintiffs' favor. Plaintiffs' negligence claim alleges breach of duty based on SJPD's failure to act on information it allegedly received from someone "on behalf of Getaround." (*See* Dkt. No. 38 at ¶¶ 55-56.) The amended complaint contains no allegations regarding interference with "financial or commercial interest," which is required to trigger immunity under Section 818.8. *See Johnson*, 69 Cal. 2d at 800 (holding that Section 818.8 immunity did not apply to claim that parole officer failed to adequately warn plaintiff because the alleged negligent misrepresentation did not interfere with financial or commercial interests).

San Jose argues in its reply brief that Section 818.8 applies because "the alleged injury is caused by an alleged breach of 'the duty to use due care in obtaining and communicating information'" and thus the claim sounds in misrepresentation, not negligence. (*See* Dkt. No. 58 at 9-10 (quoting *United States v. Neustadt*, 366 U.S. 696, 706 (1961)).) Because San Jose reiterated this argument at the hearing on September 12, 2019 and Plaintiffs had an opportunity to respond, the Court addresses the argument here and finds the City's reliance on *Neustadt* misplaced.

The *Neustadt* Court addressed "whether the United States may be held liable, under the Federal Tort Claims Act, 28 U.S.C. [§] 1346(b), . . . to a purchaser of residential property who has been furnished a statement reporting the results of an inaccurate [Federal Housing Administration]



United States District Court
Northern District of California

inspection and appraisal, and who, in reliance thereon, has been induced by the seller to pay a purchase price in excess of the property's fair market value." 366 U.S. at 697-98. The district court found in favor of the plaintiffs and the Fourth Circuit affirmed despite the Government's "objection that recovery was barred by 28 U.S.C. [§] 2680(h), . . . which excepts from the coverage of the Tort Claims Act 'any claim arising out of . . . misrepresentation.'" *Id.* at 701. The Supreme Court reversed, noting, in pertinent part:

> To say, as the Fourth Circuit did, that a claim arises out of "negligence," rather than "misrepresentation," when the loss suffered by the injured party is caused by the breach of a 'specific duty' owed by the Government to him, i.e., the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of "negligent misrepresentation,". . . and which there is every reason to believe Congress had in mind when it placed the word "misrepresentation" before the word "deceit" in [§] 2680(h).

*Id.* at 706-07 (footnote omitted). Thus, the *Neustadt* Court concluded that Section 2680(h) immunized the Government from liability in the action because:

> the Government owes a "specific duty" to obtain and communicate information carefully, less the intended recipient be misled to his *financial harm*. While we do not condone carelessness by government employees in gathering and promulgating such information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability.

*Id.* at 710 (emphasis added). In reaching that conclusion, the *Neustadt* Court noted that the tort of misrepresentation "has been confined very largely to the invasion of interests of a financial or commercial character, in the course of business dealings." *Id.* at 711 n.26 (internal quotation marks and citation omitted).

Again, there are no allegations of financial or commercial harm here, and California caselaw is clear that Section 818.8 is inapplicable in the absence of such harm. *See Johnson*, 69 Cal. 2d at 800. Thus, San Jose fails to show that immunity under Section 818.8 applies as a matter of law.

**4. Government Code § 818**

San Jose argues that "Plaintiffs' claim for punitive damages is precluded as a matter of

law" because Government Code § 818 provides that "a public entity is not liable for damages . . . imposed primarily for the sake of example and by way of punishing the defendant." (Dkt. No. 45 at 10 (quoting Cal. Gov. Code § 818).) Plaintiffs' opposition counters that they "do not specifically assert a punitive damage[s] claim against the City and they agree that such damages are not recoverable under the Government Code." (Dkt. No. 54 at 5.) Because Plaintiffs do not seek punitive damages against San Jose, the City's argument is moot.

***

Accordingly, the Court GRANTS San Jose's motion to dismiss with leave to amend because Plaintiffs fail to plead a statutory basis for their negligence claim against the City.

## III. Vigilant

### A. Request for Judicial Notice

Generally, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Courts may, however, consider adjudicative facts subject to judicial notice under Federal Rule of Evidence 201 at the Rule 12(b)(6) stage. *Id.* Pursuant to Rule 201(b), a judicially noticed adjudicative fact must be one "that is not subject to reasonable dispute because it: (1) is generally known with the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

In support of its motion, Vigilant seeks judicial notice of certain federal and state government websites; specifically, the National Crime Information Center ("NCIC") website maintained by the FBI at https://www.fbi.gov/services/cjis/ncic, and the California Department of Justice ("CDOJ") website containing "Policies, Practices and Procedures for California Law Enforcement Telecommunications System," https://oag.ca.gov/sites/oag.ca.gov/files/clets-ppp-030818_0.pdf. (Dkt. No. 46 at n.1.) Vigilant asserts that the websites "explain[ ] how the stolen vehicle hot list is created, maintained, modified, and used." (*Id.*) Plaintiffs argue that the websites do not meet the Rule 201(b) requirement "that judicially noticed facts are 'not subject to reasonable dispute' because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (Dkt. No. 55 at 2.) The Court disagrees.

Courts in this circuit routinely take judicial notice of material contained on government agency websites. *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010); *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 892 n.2 (N.D. Cal. 2019); *Buffin v. City and Cty. of San Francisco*, No. 15-cv-04959-YGR, 2019 WL 1017537, at *10 n.29 (N.D. Cal. Mar. 4, 2019) ("[A] court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by government agencies.") (internal quotation marks, citation, and alteration omitted); *Am. Civil Liberties Union of N. California v. Azar*, No. 16-cv-03539-LB, 2018 WL 4945321, at *3 n.17 (N.D. Cal. Oct. 11, 2018) ("As a matter of public record, the court may take judicial notice of information on government websites that is not reasonably subject to dispute."); *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032 (N.D. Cal. 2018) ([B]ecause of their perceived reliability, courts have often admitted records taken from websites maintained by government agencies.") (collecting cases); *Cty. of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1024 (N.D. Cal. 2004).

Further, and despite Plaintiffs' argument to the contrary, the adjudicative facts proffered are not subject to reasonable dispute. The information cited by Vigilant concerns: (1) how the NCIC maintains a nationwide database of stolen vehicles (among other national crime data) and provides that information to state law enforcement agencies through a state-level point of contact; and (2) how the CDOJ maintains and operates the stolen vehicle database as that point of contact for California. Plaintiffs can of course argue that such policies were not followed here, were not otherwise applicable in this case, or that the policies stated on the websites are not the actual policies, but they cannot reasonably dispute what the NCIC and CDOJ websites state.

Plaintiffs' reliance on *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) fails to persuade. *Ries* involved judicial notice of FDA correspondence to third parties that addressed a "question . . . central to the reasonable dispute between the [litigating] parties over whether [the] defendants' food labels [were] misleading." 287 F.R.D. at 542. Here, by contrast, Vigilant seeks judicial notice of public-facing policies documented on official government websites. Because the proffered material meets the requirements for judicial notice under Rule 201(b), the Court takes judicial notice of the CDOJ and NCIC websites.

United States District Court
Northern District of California

### B. Discussion

Plaintiffs bring a single claim against Vigilant for negligence, alleging that Vigilant "breached its duty to maintain accurate records of stolen vehicles, which records are transmitted to and relied upon by police agencies throughout California and the rest of the United States through [Vigilant's] ALPR system." (Dkt. No. 38 at ¶ 93.) Vigilant moves to dismiss the claim because Plaintiffs: (1) fail to plead any factual allegations regarding "the existence or breach of a duty by Vigilant"; and (2) fail to allege any "damages proximately caused by the alleged breach of such duty by Vigilant." (Dkt. No. 46 at 3-4.) The Court concludes that the first argument is dispositive and agrees that dismissal with leave to amend on those grounds is warranted.

The amended complaint alleges that as a manufacturer of APLR equipment "and host of the [APLR] data, Vigilant has a duty to ensure the accuracy of the information within its ALPR system." (Dkt. No. 38 at ¶ 61.) As previously discussed, Plaintiffs allege that in the alternative to SJPD or Getaround's alleged negligence, SJPD reported that the rental car "was actually not stolen or had been recovered in a manner that notified Vigilant that the car should not be on its stolen vehicle list." (*Id.* at ¶ 62.) Plaintiffs further allege that Vigilant "failed to update its list of stolen vehicles" despite SJPD's report, and the failure to do so constitutes a breach of Vigilant's "duty to maintain accurate records of stolen vehicles." (*Id.* at ¶¶ 63, 93.)

Even assuming arguendo that Vigilant did have a duty to maintain its own accurate records of stolen vehicles, Plaintiffs' allegations regarding breach of that duty are not plausible. Although Plaintiffs' alternative allegations regarding SJPD's receipt of information regarding the rental car's recovery are permissible at this stage of litigation, *see PAE*, 514 F.3d at 859, Plaintiffs must still provide more than "naked assertion[s] devoid of further factual enhancement," s*ee Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). Plaintiffs' allegation that SJPD reported that the rental car "was actually not stolen or had been recovered *in a manner that notified Vigilant* that the car should not be on its stolen vehicle list" is conclusory and does not further explain the "manner" of any such notification such that the allegation is plausible. In the absence of any factual allegations regarding Vigilant's receipt of information regarding the rental car's non-stolen status, the Court cannot "draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Further, Plaintiffs' allegations do not give rise to a reasonable inference that Vigilant had control over the stolen vehicle list such that it could remove a vehicle from the list. Plaintiffs allege that Vigilant "hosts" the stolen vehicle data used in its APLR system. (*See* Dkt. No. 38 at ¶ 61.) Absent further factual allegations, merely hosting such data does not suggest that Vigilant creates or otherwise controls the content of the stolen vehicle list. The CDOJ and NCIC websites suggest that a private entity like Vigilant would not have such control.[13] While Plaintiffs may allege otherwise, they must allege facts that suggest such control is plausible.

Accordingly, the Court GRANTS Vigilant's motion to dismiss with leave to amend.

**CONCLUSION**

For the reasons set forth above, the Court:

1. GRANTS Getaround's motion to compel arbitration and STAYS the action as to Getaround pending completion of arbitration;
2. GRANTS Contra Costa Defendants' motion to dismiss the state law tort claims against the County to the extent those claims are premised on direct and not vicarious liability;
3. DENIES Contra Costa Defendants' motion to dismiss in all other respects;
4. GRANTS San Jose's motion to dismiss; and
5. GRANTS Vigilant's motion to dismiss

Plaintiff is granted to leave to amend and shall file an amended complaint within 30 days of this Order. A Case Management Conference is scheduled for November 14, 2019 at 1:30 p.m.

[13] *See* https://www.fbi.gov/services/cjis/ncic ("The FBI provides a host computer and telecommunication lines to a single point of contact in each . . . state," and "[t]hose jurisdictions, in turn, operate their own computer systems, providing access to nearly all local criminal justice agencies and authorized non-criminal justice agencies nationwide. The entry, modification, and removal of records are the responsibility of the [law enforcement] agency that entered them."); *Policies, Practices and Procedures (and Statutes)*, California Dep't of Justice 44, 48 (2018), https://oag.ca.gov/sites/oag.ca.gov/files/clets-ppp-030818_0.pdf (noting that the CDOJ "maintains and operates the [California Law Enforcement Telecommunications System] and the criminal justice databases," including "the Stolen Vehicle System," defined as the CDOJ database "containing information regarding lost, stolen, stored or impounded vehicles, vehicle license plates or vehicle parts").

in Courtroom F, 450 Golden Gate Ave., San Francisco. A Joint Case Management Conference Statement is due November 7, 2019.

This Order disposes of Docket Nos. 17, 22, 43, 45, and 46.

**IT IS SO ORDERED.**

Dated: September 20, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California