Glenn Katon SBN 281841
KATON.LAW
385 Grand Avenue, Suite 200
Oakland, CA 94610
gkaton@katon.law
(510) 463-3350
(510) 463-3349 (fax)

ATTORNEY FOR PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HOFER and JONATHAN HOFER, | Case No. 3:19-cv-02205-JSC |
| Plaintiffs, | **SECOND AMENDED COMPLAINT AND JURY DEMAND** |
| v. | |
| KYLE EMLEY, a Contra Costa County Deputy Sheriff, in his individual capacity, WILLIAM ODOM, a Contra Costa County Deputy Sheriff, in his individual capacity, BRANDON GANT, a Contra Costa County Deputy Sheriff, in his individual capacity, Defendant DOE 1, a Contra County Deputy Sheriff, in his individual capacity, COUNTY OF CONTRA COSTA, a municipal corporation, GETAROUND, INC., and Does 2 to 50, | |
| Defendants. | |

Plaintiffs Brian Hofer and Jonathan Hofer file this Second Amended Complaint against Defendants based upon the following:

1.      This is a civil rights case based on Defendants' violation of the Fourth Amendment's prohibition against unreasonable searches and seizures, and several state torts. Contra Costa County Sheriff's Deputies stopped, searched, detained, and arrested Plaintiffs without probable cause to believe they committed a crime, and searched their vehicle and belongings without probable cause or

SECOND AMENDED COMPLAINT AND JURY DEMAND 3:19-cv-02205-JSC          Page 1

a warrant. Defendants' unlawful actions endangered Plaintiffs' lives, violated their civil rights, and caused them physical and emotional injuries.

## PARTIES

2.     Plaintiff BRIAN HOFER ("BRIAN") is and was at all times relevant to this action an individual residing in Oakland, California.

3.     Plaintiff JONATHAN HOFER ("JONATHAN") is and was at all times relevant to this action an individual residing in Oakland, California.

4.     Defendant KYLE EMLEY ("EMLEY") was at all times relevant to this action a Deputy Sheriff for Contra Costa County acting within the course and scope of his employment and under color of state law.

5.     Defendant BRANDON GANT ("GANT") was at all times relevant to this action a Deputy Sheriff for Contra Costa County acting within the course and scope of his employment and under color of state law.

6.     Defendant WILLIAM ODOM ("ODOM") was at all times relevant to this action a Deputy Sheriff for Contra Costa County acting within the course and scope of his employment and under color of state law.

7.     Defendant DOE 1 is sued herein under a fictitious name.  His true name is unknown to Plaintiffs.  When his true name is ascertained, Plaintiffs will seek leave of Court to amend this Complaint by adding DOE 1's real name.  DOE 1 was at all times relevant to this action a Deputy Sheriff for Contra Costa County acting within the course and scope of his employment and under color of state law.

8.     Defendant COUNTY OF CONTRA COSTA ("CONTRA COSTA"), California, is and was a municipal corporation at all times relevant to this action. CONTRA COSTA owns, operates, manages, directs, and controls the Contra Costa County Sheriff's Office, and at all times relevant to this action employed EMLEY, GANT, ODOM, and DOE 1. Throughout the incident that is the subject of this Complaint, EMLEY, GANT, ODOM, and DOE 1 followed CONTRA COSTA's policies and practices.

SECOND AMENDED COMPLAINT AND JURY DEMAND 3:19-cv-02205-JSC          Page 2

9.      Defendant GETAROUND, INC. ("GETAROUND") is a car sharing platform, whereby private vehicle owners rent their vehicles to other private parties. GETAROUND also provides its own vehicles to the platform for rental by private parties. The car BRIAN rented at the time of the events in this Complaint was owned by GETAROUND.[1]

10.     Defendant DOES 2-50 are actors who participated in the constitutional violations and/or torts alleged in this Complaint. When their true names are ascertained, Plaintiffs will seek leave of Court to add those DOES to the Complaint by their real names.

## JURISDICTION AND VENUE

11.     Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because it is brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiffs bring this action for violation of the Fourth Amendment to the United States Constitution. The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and decide Plaintiffs' claims arising under state law.

12.     **Intradistrict Assignment**: A substantial part of the acts and omissions in this Complaint occurred in the County of Contra Costa, California. Pursuant to Civil L.R. 3-2(d) this case is properly assigned to the Oakland or San Francisco Division of the Court.

## FACTS

13.     On November 21, 2018, BRIAN rented a car from GETAROUND so that he and his brother JONATHAN could travel north to visit family for the Thanksgiving holiday. Brian rented the car without incident.

14.     On November 25, 2018, BRIAN and JONATHAN were returning to Oakland from the holiday in the GETAROUND car, driving west on I-80 near San Pablo, California.  At approximately 6:50 p.m., they were stopped by a Contra Costa Sheriff's deputy, later identified as GANT. After tailing them for a period of time, GANT turned on his overhead lights and directed BRIAN over the

---

[1] Plaintiffs do not offer new allegations against Getaround following their First Amended Complaint and do not ask the Court to revisit its order staying their claim against Getaround.

SECOND AMENDED COMPLAINT AND JURY DEMAND 3:19-cv-02205-JSC          Page 3

loudspeaker to exit the freeway. BRIAN was neither exceeding the speed limit nor violating any other laws.

15.    BRIAN complied and exited I-80 by taking the San Pablo Dam Road off-ramp, and he pulled into a well-lit shopping center parking lot near Ross Dress for Less and Jack in the Box. BRIAN put the car into park, turned off the engine, and turned on the inside dome light so that the officer could easily see inside the car.

16.    At this time, two additional Sheriff vehicles surrounded BRIAN and JONATHAN's vehicle. The drivers of the other two police vehicles were later identified as EMLEY and ODOM.

17.    Next, GANT told BRIAN that "you probably have some idea what is going on," but made no attempt to explain why he pulled them over. BRIAN stated to GANT that he did not have any idea what was going on, and BRIAN requested that GANT check their identification and discuss the matter with them. GANT did not do so.

18.    GANT next directed BRIAN to remove the car key from the ignition and place it on the roof of the vehicle, which BRIAN did.

19.    GANT next directed BRIAN to place both hands outside the driver's window, which BRIAN did.

20.    GANT next directed JONATHAN to place both hands outside the passenger window. BRIAN informed GANT that this was impossible, as the power window was rolled up, and without the key to turn on the engine, the window could not be opened. GANT acknowledged this.

21.    GANT next directed BRIAN to open his driver side door, place his hands behind his head, and walk backwards towards the sound of GANT's voice. This was when BRIAN noticed GANT was pointing his gun at him, as was EMLEY.

22.    BRIAN complied with GANT's directions. As BRIAN reached GANT, GANT grabbed BRIAN's hands and handcuffed them behind his back. GANT made no attempt to check BRIAN's identification or ask any questions about the car, BRIAN or JONATHAN.

23.    GANT placed BRIAN in the back of GANT's vehicle.

SECOND AMENDED COMPLAINT AND JURY DEMAND 3:19-cv-02205-JSC          Page 4

24.     EMLEY and GANT next directed JONATHAN to exit the passenger side door in a similar manner as BRIAN. From the back of GANT's vehicle, BRIAN saw that deputies GANT, EMLEY, and ODOM all had their guns drawn and pointed at JONATHAN.

25.     JONATHAN complied with the officers' directions, walking backwards slowly and non-threateningly towards EMLEY.

26.     For no apparent reason, EMLEY started screaming at JONATHAN and pushed JONATHAN to his knees, facing away from EMLEY. In full view of BRIAN, EMLEY pointed his gun to the back of JONATHAN's head, execution-style. BRIAN was terrified that if he yelled, EMLEY would shoot JONATHAN in the head, so he stayed quiet and still in GANT's car. EMLEY next slammed JONATHAN forward to the ground, injuring JONATHAN.

27.     EMLEY then handcuffed JONATHAN behind his back, and placed JONATHAN in the back of EMLEY's vehicle.

28.     GANT, ODOM, and EMLEY made no attempt to identify BRIAN or JONATHAN, or to communicate any information about why they were brutally apprehending BRIAN and JONATHAN.

29.     The three officers next searched BRIAN's rental vehicle, opening all doors and the closed trunk. GANT unzipped the suitcases in the trunk and examined the contents of the luggage, which contained clothing.

30.     The officers did not have a warrant to search the vehicle and its contents and at no time did BRIAN or JONATHAN consent to those searches. The officers also did not have a warrant to search or arrest BRIAN or JONATHAN.

31.     GANT finally asked BRIAN for his identification. Still handcuffed, BRIAN directed GANT to his front pocket and GANT removed BRIAN's wallet containing his driver's license. GANT presumably called dispatch using his radio to check BRIAN's identification.

32.     EMLEY did the same to JONATHAN, also still handcuffed, removing JONATHAN'S identification and using his radio to inquire.

33.    GANT next walked over to BRIAN and finally stated that the ALPR registered the car's license plate as a "hit" against a stolen vehicle "hot list." BRIAN and JONATHAN do not know if a "hot list" existed or, if it did, whether the vehicle BRIAN rented actually appeared on it.

34.    BRIAN explained that he had rented the car from GETAROUND, which presumably would not have rented him a stolen vehicle. GANT asked BRIAN for the rental paperwork, and BRIAN told GANT that he booked the rental through an application on his smartphone, which was still in the vehicle.

35.    GANT fetched the phone and walked over to BRIAN, demanding the passcode. BRIAN refused to provide GANT the code and asked to enter it himself. GANT denied this request and said BRIAN had "no choice" but to provide him the passcode. BRIAN did not know if this meant GANT would shoot him if he refused, beat him, take him to the police station, or take some other unlawful action in addition to demanding the passcode to his phone, which had stored on it a digital record of nearly every aspect of BRIAN's life. BRIAN reluctantly gave GANT the code.

36.    Neither GANT nor the other officers on the scene had a warrant to search BRIAN's phone.

37.    GANT opened the phone's screen and searched BRIAN's phone. The GETAROUND application showed an active car rental. GANT walked away with BRIAN's unlocked phone to talk to the other officers. BRIAN does not know the extent to which GANT further searched his phone outside of his presence.

38.    GANT then called GETAROUND. GETAROUND confirmed to GANT that BRIAN had rented the car as he claimed.

39.    GANT next removed BRIAN from the vehicle and took off the handcuffs. EMLEY did the same for JONATHAN. By this time, BRIAN and JONATHAN had been in police custody for approximately forty minutes.

40.    ODOM told BRIAN that he "told the others the "hit" made no sense."

41.    GANT informed BRIAN that they could not yet leave, as he was waiting on his supervisor, DOE 1, to bring some paperwork. DOE 1 arrived but did not speak to BRIAN or JONATHAN.

SECOND AMENDED COMPLAINT AND JURY DEMAND 3:19-cv-02205-JSC      Page 6

42.     DOE 1 handed GANT a single sheet of mostly blank paper, and GANT asked BRIAN to sign it, stating that by signing it, BRIAN was acknowledging that he had been detained for longer than 15 minutes. BRIAN signed it. No such paperwork was presented to JONATHAN.

43.     GANT, ODOM, EMLEY, and DOE 1 each either used forced against BRIAN and JONATHAN and/or, as armed back up, were integral participants in the use of force.

44.     At no time did GANT, ODOM, EMLEY, or DOE 1 intervene or attempt to intervene to stop the other officers' excessive use of force or illegal searches.

45.     BRIAN and JONATHAN left the scene and returned the vehicle to the GETAROUND lot in Oakland, near where they lived.

46.     BRIAN and JONATHAN timely and properly filed government code claims against CONTRA COSTA pursuant to California Government Code § 910 *et seq*, and this action is timely filed within all applicable statutes of limitation.

47.     Communications and reporting among Defendants CONTRA COSTA, GANT, EMLEY, ODOM, GETAROUND, and the DOES regarding the car BRIAN rented are within the exclusive control of those Defendants. Although BRIAN and JONATHAN have obtained limited information from Defendants and other entities, BRIAN and JONATHAN do not, at this time, have any idea about the accuracy or completeness of that information.

### *County of Contra Costa*

48.     The Contra Costa County Sheriff acts as the final policymaker for CONTRA COSTA with respect to the policies and practices of Deputy Sheriffs.

49.     The Contra Costa County Sheriff made a public statement about the incident with BRIAN and JONATHAN on November 25, 2018, including: "The Deputy Sheriffs involved in this case followed procedure and acted appropriately."

50.     GANT, EMLEY, ODOM, and DOE 1's actions with BRIAN and JONATHAN were consistent with and pursuant to the policies, practices, and customs of CONTRA COSTA.

### *Getaround*

51.     After the vehicle was recovered in San Jose by the unnamed driver and placed back into their platform to be rented again, GETAROUND failed to notify San Jose's police department of

SECOND AMENDED COMPLAINT AND JURY DEMAND 3:19-cv-02205-JSC          Page 7

the recovery, or failed to notify the department in a way that was likely to cause the department to accurately document that it was not stolen.

52.   GETAROUND did not notify San Jose's police department of the recovery in writing, speak to the officer in charge of the investigation, or send someone to the police station to obtain confirmation that the car was no longer considered stolen. GETAROUND's failure to take such reasonable steps endangered the lives of all future renters of that vehicle.

53.   GETAROUND's failure to notify San Jose's police department of the car's recovery, or failure to notify the department in a meaningful way, resulted in the vehicle remaining in a stolen vehicle database until at least November 25, when BRIAN and JONATHAN were pulled over.

54.   GETAROUND harmed BRIAN and JONATHAN by renting BRIAN a reportedly stolen vehicle. GETAROUND also breached its duty to renters of its vehicles and their passengers to update information it provides to police agencies regarding the status of its vehicles that were reported stolen.

### *Damages*

55.   BRIAN and JONATHAN suffered a deprivation of their liberty as a result of their detention and arrest by CONTRA COSTA deputies.

56.   BRIAN also suffered a deprivation of his right to be free from unreasonable searches when Contra Costa deputies searched his person, vehicle, trunk, luggage, and mobile phone. JONATHAN suffered a deprivation of his right to be free from unreasonable searches when CONTRA COSTA deputies searched his person and luggage.

57.   BRIAN and JONATHAN suffered severe emotional distress from having guns pointed at them, being handcuffed and detained, and otherwise being subjected to excessive force and treated like violent criminals.

58.   JONATHAN suffered bruises from being thrown to the ground and an injury to his hand that may require surgery.

59.   BRIAN suffered acute emotional trauma from witnessing EMLEY pointing his gun at the back of JONATHAN's head while he was on his knees and posed absolutely no threat to EMLEY.

**COUNT ONE: 42 U.S.C. § 1983 (FOURTH AMENDMENT)**
**AGAINST CONTRA COSTA COUNTY**

60.     Pursuant to the foregoing, the actions of the Deputy Sheriff Defendants were consistent with and pursuant to the policies, practices, and customs of CONTRA COSTA.

61.     Those County policies, practices, and customs through which the Deputy Sheriff Defendants violated BRIAN and JONATHAN's Fourth Amendment rights were the moving force behind the harm done to BRIAN and JONATHAN.

62.     CONTRA COSTA also ratified the actions of the Deputy Sheriff Defendants.

63.     CONTRA COSTA is liable for BRIAN and JONATHAN's damages under the doctrine of municipal liability.

**COUNT TWO: 42 U.S.C. § 1983 (FOURTH AMENDMENT)**
**AGAINST GANT, ODOM, EMLEY, and DOE 1**

64.     Pursuant to the foregoing, Defendants violated Plaintiff's rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

65.     Defendants stopped, detained, and arrested BRIAN and JONATHAN without a warrant and without probable cause.

66.     Defendants further conducted a warrantless search of BRIAN and JONATHAN's trunk and suitcases, and coerced BRIAN to provide the password to his phone and searched it.

67.     Throughout the ordeal, Defendants' used excessive force against BRIAN and JONATHAN.

68.     Defendants' Fourth Amendment violations caused BRIAN and JONATHAN damages for which they are entitled to recovery.

**COUNT THREE: BANE ACT**
**AGAINST CONTRA COSTA, GANT, ODOM, EMLEY, and DOE 1**

69.     As set forth above, Defendants, acting alone or in concert, intentionally interfered with, or attempted to interfere with, BRIAN and JONATHAN's civil rights by threats, intimidation, or coercion.

70.     Defendants made threats of violence and committed acts of violence against BRIAN and JONATHAN, causing them physical and emotional injuries.

71.     Defendants also interfered with, attempted to interfere with, and violated BRIAN and JONATHAN's rights as follows:

   a.   The Fourth Amendment right to protection from the use of excessive force and unreasonable searches at the hands of police officers;

   b.   The right to be free from the use of excessive force and unreasonable searches as secured by the California Constitution, Article 1, Section 13;

   c.   The right to privacy secured by the California Constitution Article 1, Section 1;

   d.   The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

72.     The threats, intimidation, and coercion described in this complaint were not necessary or inherent to Defendants' violation of BRIAN and JONATHAN's rights, or to any legitimate police activity.

73.     Further, in the alternative or concurrently, Defendants' violations of duties and rights and coercive conduct were volitional acts; not accidental or merely negligent.

74.     As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of BRIAN and JONATHAN's rights under the United States and California's Constitution and law, they sustained injuries and damages for which they are entitled to compensation.

## COUNT FOUR: ASSAULT & BATTERY
## AGAINST CONTRA COSTA, GANT, ODOM, EMLEY

75.     As set forth above, Defendants GANT, ODOM, and EMLEY committed Assault and Battery against BRIAN and JONATHAN.

76.     CONTRA COSTA is liable for GANT, ODOM, and EMLEY's Assault and Battery under Government Code § 815.2(a).

77.     Defendants wrongful acts were a direct and proximate cause of BRIAN and JONATHAN's injuries and damages, for which they are entitled to compensation.

**COUNT FIVE: FALSE IMPRISONMENT**
**AGAINST CONTRA COSTA, GANT, ODOM, EMLEY**

78.    As set forth above, Defendants GANT, ODOM, and EMLEY committed False Imprisonment against BRIAN and JONATHAN.

79.    CONTRA COSTA is liable for GANT, ODOM, and EMLEY's False Imprisonment under Government Code § 815.2(a).

80.    Defendants wrongful acts were a direct and proximate cause of BRIAN and JONATHAN's injuries and damages, for which they are entitled to compensation.

**COUNT SIX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST CONTRA COSTA, GANT, ODOM, EMLEY**

81.    As set forth above, Defendants GANT, ODOM, and EMLEY committed Intentional Infliction of Emotional Distress against BRIAN and JONATHAN.

82.    CONTRA COSTA is liable for GANT, ODOM, and EMLEY's Intentional Infliction of Emotional Distress under Government Code § 815.2(a).

83.    Defendants wrongful acts were a direct and proximate cause of BRIAN and JONATHAN's injuries and damages, for which they are entitled to compensation.

**COUNT SEVEN: NEGLIGENCE**
**AGAINST CONTRA COSTA, GANT, ODOM, EMLEY, DOES 1-50, and GETAROUND**

84.    In the alternative to the intentional conduct alleged above against GANT, ODOM, EMLEY, and DOE 1, those Defendants negligently breached their duty of care when conducting the traffic stop of BRIAN and JONATHAN. CONTRA COSTA is liable for GANT, ODOM, EMLEY, and DOE 1's negligence under Government Code § 815.2(a).

85.    Defendants' negligent acts were a direct and proximate cause of BRIAN and JONATHAN's injuries and damages, for which they are entitled to compensation.

WHEREFORE, Plaintiffs BRIAN HOFER and JONATHAN HOFER demand trial by jury and judgment in their favor as follows:

a.    Compensatory damages in an amount to be proven at trial;

b. Punitive damages;

c. Costs of suit;

d. Attorney's fees as provided by law; and

e. Such other and further relief in favor of Plaintiffs as is just and proper.

Respectfully submitted,

/s/ Glenn Katon
Glenn Katon

ATTORNEY FOR PLAINTIFFS